FIFTH DIVISION
March 3, 2006

No. 1-04-2354

| | | |
|---|---|---|
| CONSTANTIN CAPAROS; DESPINA CAPAROS; | ) | Appeal from the |
| CHARLES ALEXANDER; SHELDON H. CLOOBECK; | ) | Circuit Court of |
| JOHN P. CULHANE; TREASUREX FINANCIAL LTD., | ) | Cook County |
| assignee of Paul M. Daugerdas and Paul M. Daugerdas Jr.; | ) | |
| PETER D'AGOSTINO; DRINK INVESTORS, Ralph E. | ) | |
| Lowenberg TTE Allen Kohl 1974 Trust, General Partner; | ) | |
| DUANE ERICKSON; ETT, INC; ELIZA KAUFMAN | ) | |
| FLYNN; BRUCE FRANKENBERG, RALPH S. GERBIE; | ) | |
| GERBIE PROFIT SHARING PLAN; JAY HARRIS; IRA | ) | |
| KAUFMAN; JOHN KAUFMAN; STEPHEN KAUFMAN; | ) | |
| JAMES H. KOULOS; SHELDON KREITMAN, D.P.M.; | ) | |
| ALFREDO LOPEZ; MANSUR INVESTMENT III, LP; | ) | |
| ROBERT PINKERT; ROBERT L. PLUMMER, Jr.; | ) | |
| JAMES D. POHL; RICK ROEHM; MAURICE | ) | |
| SANDERMAN; BENJAMIN B. SARMAS; DAVID H. | ) | |
| SHULMAN; MARK SMITH; SHEPARD SWIFT; | ) | |
| MELODY SWINK; JEFFREY TESSIATORE; BARRY | ) | |
| WEINSTEIN; DANIEL WHITE; and ROBERT ZENDER, | ) | |
| | ) | |
| Plaintiffs-Appellees, | ) | |
| | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| | ) | |
| MICHAEL MORTON, SCOTT DEGRAFF and LATE | ) | |
| NIGHT LAS VEGAS, INC., | ) | Honorable |
| | ) | Nancy J. Arnold, |
| Defendants-Appellants. | ) | Judge Presiding. |

PRESIDING JUSTICE GALLAGHER delivered the opinion of the court:

Defendants Michael Morton, Scott DeGraff and Late Night Las Vegas, Inc., appeal the

trial court's judgment in an action brought by numerous limited partners for breach of fiduciary

duty, a constructive trust and an accounting. We hold that although the limited partnership could

have been named as a party defendant, the partnership's interests were not prejudiced by its

absence from the proceedings in the trial court, and we therefore affirm.

In the early 1990s, Morton and DeGraff developed and opened Drink, a restaurant and nightclub, in Chicago. Late Night Las Vegas, Inc., a Nevada corporation, was formed to build and operate a similar Drink club in Las Vegas. The approximately 35 limited partners who are plaintiffs in this case represent 55 % of the Late Night Las Vegas Limited Partnership, a Nevada limited partnership with its principal offices in Chicago. Late Night Las Vegas, Inc., was the corporate general partner of the limited partnership.

In January 1994, Late Night Las Vegas entered into a 10-year lease of a corner lot near the Las Vegas strip, on which Drink was constructed. The land was owned by Air Storage, Inc. Under the lease, Morton and DeGraff had a purchase option to buy the land from Air Storage at any time during the first five years of the lease. The option allowed Morton and DeGraff to sell the land to a third party without the limited partnership's involvement and with the limited partners having no rights to future development. Fifty limited partnership interests in Drink were offered for $50,000 each, to raise a total of $2.5 million. Plaintiffs each purchased an interest. Morton and DeGraff's option to purchase the land from Air Storage was disclosed to plaintiffs. Under the partnership agreement, the cash flow received from Drink's operations would be applied to partnership expenses and then be distributed 99 % to the limited partners and 1 % to the general partner until the limited partners received an amount equal to their original contributions, after which the limited partners and the general partner each would receive 50 % of the income from Drink.

The club opened in May 1995 and was initially profitable, although it encountered

operational difficulties and cost overruns that are described in great detail in the parties' briefs but are of little importance here. In October 1997, Morton and DeGraff called a meeting of the limited partners and presented a proposal to relocate Drink to another Las Vegas site. The suggested relocation was prompted by an offer from Grand Plaza, which owned 33 acres of land contiguous to the Drink site. Morton and DeGraff informed the limited partners that Grand Plaza offered to buy the Drink site and the surrounding land for $15 million and sell it to a hotel casino developer. The limited partners voted to approve the transaction and relocate Drink.

Following that vote, Morton and DeGraff entered into a purchase agreement with Grand Plaza in November 1997 which provided that they would buy the Drink land from Air Storage under their purchase option and then sell the land to Grand Plaza. Under the agreement, Grand Plaza was to pay defendants $250,000 of refundable earnest money and an escrow deposit of $3 million. In December 1997, Morton and DeGraff bought the Drink land from Air Storage, thereby becoming the partnership's landlord.

In March 1999, after numerous extensions of the closing date, Grand Plaza cancelled its agreement with Morton and DeGraff. In July 2000, after Morton and DeGraff informed the limited partners that Drink was losing money and that they had been unsuccessful in finding a buyer, Morton and DeGraff told the limited partners that Drink would close on July 31, 2000, which it did. To that point, each limited partner had received about $35,000 back on a $50,000 investment, or a similar percentage on a smaller investment. (Some limited partnership interests were purchased by investors pooling funds to purchase a single interest.)

On August 28, 2000, Morton and DeGraff wrote to the limited partners that the lease of

the Drink property from Air Storage was "in default for the nonpayment of rent" and that the partnership's lease of the property was terminated on July 31, 2000. The letter stated that a third party had offered to buy the partnership's assets (the building, equipment and inventory) for $450,000. Morton and DeGraff asked the partners to vote on the potential sale.

Morton and DeGraff contend that when several limited partners demanded that they reinstate the Drink lease, they offered to do so if the partnership approved a capital call (through which the partnership seeks additional money from the limited partners to pay partnership debts), to which the partners did not respond. However, plaintiffs assert that after Drink closed, Morton and DeGraff continued to lease the Drink property from Air Storage and subleased it to a promoter who operated it as Club Utopia for about a year. Plaintiffs state that in August 2003, Morton and DeGraff leased the property to another venture that opened a club called Ice.

Plaintiffs contend that Morton and DeGraff, freed of the partnership's lease of the property, profited from the sublease arrangements even though the former Drink building, equipment and inventory belonged to the partnership. Morton and DeGraff maintain that they "carried the property" and that no profit was made. In October 2000, plaintiffs filed suit for breach of fiduciary duty, a constructive trust, and an accounting, seeking their "*pro rata*" share of the value of the lease with Air Storage. The limited partnership was not a party to the complaint. Plaintiffs later amended the complaint to add counts of conversion and unjust enrichment.

Defendants counterclaimed for unpaid management fees, and the counterclaim did not name the limited partnership as a party. Plaintiffs moved to dismiss the counterclaim, referring

to themselves as "a group of individuals representing some of the Limited Partners in the Limited Partnership" and contending that to obtain a judgment against the limited partnership, defendants must name the limited partnership as a party. The trial court granted plaintiffs' motion to dismiss defendants' counterclaim.

As to plaintiffs' amended complaint, defendants moved for judgment on the pleadings, asserting that plaintiffs alleged no injuries distinct from those sustained by the partnership. Defendants contended that plaintiffs could only prevail in a derivative action to which the partnership was a necessary party, and defendants pointed to plaintiffs' position in their motion to dismiss that they represented only some of the limited partners and not the partnership.

The court allowed plaintiffs to bring a second amended complaint and ordered defendants to answer the complaint, barring them from moving to dismiss it. In the second amended complaint, plaintiffs brought their claims "both as individuals and derivatively pursuant to 805 ILCS 210/1001," a section of the Revised Uniform Limited Partnership Act as adopted in Illinois (the Illinois Act) (805 ILCS 210/100 *et seq.* (West 2000)). Plaintiffs alleged that Morton and DeGraff terminated the lease with Air Storage to allow them to sell the property and "wrongfully reap a multimillion dollar profit for themselves." They alleged that by retaining the option to purchase the land, Morton and DeGraff had a conflict of interest with the partnership and the limited partners because the two men effectively became the partnership's landlord, which the complaint alleged was in conflict with Morton and DeGraff's "personal desires to maximize their investment in the Property." The five-count complaint alleged that although Morton and DeGraff blamed Drink's demise on an increasingly competitive nightclub scene in Las Vegas,

5

they pursued further investment opportunities there, including three new nightclubs and one "restaurant venture." DeGraff testified at trial that he had interests in four clubs that opened between 2000 and 2002.

Count I of plaintiffs' second amended complaint alleged that defendants owed the limited partners a fiduciary duty to disclose all material facts concerning the partnership's business and act in its best interests. Plaintiffs alleged that they and the other limited partners should receive *pro rata* shares of the profits and assets converted by Morton and DeGraff. Count II alleged that Morton and DeGraff converted property that belonged to the limited partnership, including $900,000 in "extension fees" that Grand Plaza paid them under the purchase agreement to extend the closing date. Count III alleged that Morton and DeGraff were unjustly enriched by retaining "assets and property interests of the Partnership and Plaintiffs to which they are not entitled." As relief under those two counts, plaintiffs requested compensatory damages of not less than $3.75 million and punitive damages of twice that amount. In counts IV and V, plaintiffs sought the imposition of a constructive trust on partnership assets and property in defendants' control and requested an accounting of the partnership's assets and liabilities. Defendants raised as affirmative defenses, *inter alia*, that the limited partnership was a necessary and indispensable party and that plaintiffs did not allege any personal injury and thus had no standing to sue individually.

Following a two-week bench trial, the court dismissed plaintiffs' claims for conversion and unjust enrichment but found that Morton and DeGraff breached their fiduciary duty to the limited partners by not disclosing how they would benefit from their deal with Grand Plaza. The

6

court found that defendants did not fully account to the limited partners for expenses and ordered defendants to return about $833,000 in management fees to the partnership. The court imposed a constructive trust against $900,000 in extension fees that defendants received under the contract with Grand Plaza and ordered defendants to "hold that sum as trustee for the benefit of the limited partnership." The court also imposed a constructive trust equaling the value that defendants received from the $3.25 million in earnest money that defendants received from Grand Plaza and that they used to buy the Drink land. In addition, the court awarded the partnership $1 million in punitive damages.

ANALYSIS

On appeal, defendants contend that plaintiffs, who represented 55 % of the limited partners, sought relief for all of the limited partners and therefore were required to bring a derivative cause of action naming the limited partnership as a party. Without the limited partnership represented, defendants assert that the trial court adjudicated the rights of a party that was not before it and therefore could not have resolved all interests in one judgment. For those reasons, defendants argue that the judgment for plaintiffs must be reversed.

Plaintiffs respond that they were not required to bring a derivative action because they sustained unique and personal losses. They contend that in a derivative suit brought for the partnership, defendants, as the general partners, would have benefitted from any recovery. Although plaintiffs acknowledge their injuries are the same as those sustained by the other limited partners, they contend their claims differed from those sustained by Morton and DeGraff

7

as the general partners and thus were individual. Plaintiffs further assert that even if their injuries were not individual and they were required to seek relief for the limited partnership, they properly brought their action as a derivative suit. Plaintiffs contend they did not need to name the limited partnership as a party because they adequately represented the interests of both the partnership and the absent limited partners.

Because the parties have presented issues of law, our standard of review is *de novo*. *Eden Retirement Center, Inc. v. Department of Revenue*, 213 Ill. 2d 273, 284, 821 N.E.2d 240, 246 (2004). Before addressing the arguments, we note that Late Night Las Vegas, Inc., and Late Night Las Vegas Limited Partnership were business organizations created in Nevada and are thus governed by that state's laws. See 805 ILCS 210/901 (West 2000) ("the laws of the state or other jurisdiction under which a foreign limited partnership is formed govern its formation and internal affairs and the liability of its limited partners"). However, the pertinent provisions of the Nevada statute governing derivative actions in limited partnership situations are substantially the same as the corresponding Illinois act, with the statutes of both states modeled on the uniform act. Compare Nev. Rev. Stat. Ann. § 88.610 *et seq.* (Michie's 2004); 805 ILCS 210/1001 *et seq.* (West 2000). In their briefs to this court, the parties cite to the Illinois statute and do not contend that it differs from the relevant Nevada law. For that reason, though we are cognizant of the Nevada statute, we refer to the pertinent Illinois code sections in discussing the parties' arguments, as the parties themselves do.

1-04-2354

I. Did Plaintiffs State an Individual or a Derivative Claim Against Defendants?

Plaintiffs indicated in their second amended complaint that their claims were made "both as individuals and derivatively pursuant to 805 ILCS 210/1001." To the extent that plaintiffs argue that phrase defines the legal adequacy of the claims made in their complaint, the court, in determining whether an individual or derivative claim is stated, is not bound by the designations used by the parties but instead considers the nature of the alleged injury. *Hamilton v. Conley*, 356 Ill. App. 3d 1048, 1054, 827 N.E.2d 949, 955 (2005); *Sturm v. Marriott Marquis Corp.*, 85 F. Supp. 2d 1356, 1374 (N.D. Ga. 2000).

When a limited partner seeks to recover for a breach of fiduciary duty by general partners in a partnership, three types of claims are possible. *Lenz v. Associated Inns & Restaurants Co. of America*, 833 F. Supp. 362, 378 (S.D.N.Y. 1993). A limited partner can pursue an individual claim directly against the general partners for harm specific to that limited partner. In the other two kinds of relief, the plaintiff limited partner represents not just itself: the plaintiff can bring a direct claim against the general partners in a class action suit on behalf of all limited partners, or the plaintiff can allege a derivative suit on behalf of the partnership against the general partners. *Lenz*, 833 F. Supp. at 378.

In a derivative action by a corporate shareholder, the suit is brought on behalf of the corporation for harm done to it for which the corporation either cannot assert or refuses to assert its own right. *Goldberg v. Michael*, 328 Ill. App. 3d 593, 599, 766 N.E.2d 246, 251 (2002). In a direct claim, the shareholder seeks recovery for injuries sustained individually or by a class of shareholders. *M.D. Building Material Co. v. 910 Construction Venture*, 219 Ill. App. 3d 509,

9

515, 579 N.E.2d 1059, 1062 (1991). To bring a direct claim, the plaintiff must allege an injury separate and distinct from that suffered by other shareholders, or an injury that involves a contractual right, such as the right to vote or the right of majority control, that exists independently of any right of the corporation. *Goldberg*, 328 Ill. App. 3d at 599, 766 N.E.2d at 251; *Spillyards v. Abboud*, 278 Ill. App. 3d 663, 670-71, 662 N.E.2d 1358, 1363 (1996).

Courts have treated limited partners similarly to corporate shareholders in this respect. *Northern Trust Co. v. VIII South Michigan Associates*, 276 Ill. App. 3d 355, 363, 657 N.E.2d 1095, 1101 (1995); see also *Arndt v. First Interstate Bank of Utah, N.A.*, 991 P.2d 584, 588-89 (Utah 1999) (discussing uniform act and citing *Northern Trust*, among other decisions). Limited partners are investors to whom ownership is spread via their financial interests in the venture; however, they lack control over its operations by the inherent structure of a limited partnership. *M.D. Building Material*, 219 Ill. App. 3d at 515, 579 N.E.2d at 1062-63 (noting that the "passive nature of the limited partners' role has often resulted in mismanagement and self-dealing by general partners").

Limited partners seeking redress for the decreased value of their shares in the limited partnership must do so in a derivative action. *LID Associates v. Dolan*, 324 Ill. App. 3d 1047, 1069, 756 N.E.2d 866, 885 (2001). A derivative lawsuit is intended to protect the rights of the partnership, not the rights of the limited partners. *Moore v. Simon Enterprises, Inc.*, 919 F. Supp. 1007, 1009-10 (N.D. Texas 1995). "The purpose of a limited partner's derivative action is to enforce a claim which the limited partnership possesses against others [such as the general partners] but which the partnership refuses to enforce." *Wallner v. Parry Professional Building*

*Ltd.*, 22 Cal. App. 4th 1446, 1449, 27 Cal. Rptr. 2d 834, 836 (1994). For example, a claim that the general partners' misconduct resulted in diminished income to the partnership and a decrease in the value of the limited partners' interests in the venture states a derivative claim. *Litman v. Prudential-Bache Properties, Inc.*, 611 A.2d 12, 15-16 (Del. 1992). Proper derivative actions include claims for a general partner's mismanagement, negligence, diversion of assets, action beyond authority, and failure to perform elements of an agreement. *Partnership Equities, Inc. v. Marten*, 15 Mass. App. 42, 50, 443 N.E.2d 134, 138 (1982).

Plaintiffs assert that their second amended complaint stated both a derivative claim on behalf of the partnership and a claim for their individual injuries. (Plaintiffs' contention that they can proceed on both of these theories simultaneously is discussed later in this opinion.) In the complaint, plaintiffs alleged breach of fiduciary duty, conversion and unjust enrichment. Plaintiffs also sought the imposition of a constructive trust on partnership assets and property and an accounting of the partnership's assets and liabilities, and they requested that any funds recovered be "distributed pro rata to the limited partners, including plaintiffs."

Plaintiffs argue that they stated an individual action because their losses were distinct from those suffered by the partnership as a whole. They argue that Morton and DeGraff, as the general partners, were not injured as the limited partners were; rather, plaintiffs contend that Morton and DeGraff profited from the transaction "to the exclusion and detriment of the limited partners." Plaintiffs contrast their situation with that of the general partners in contending that their injuries differ from those sustained by the other members of the partnership.

Plaintiffs' main theory of relief is that Morton and DeGraff breached their fiduciary duty

to the limited partners. The nature of such an allegation is that the general partners have not sustained the same losses as the limited partners, but, rather, have gained from their wrongdoing at the expense of the limited partners and the partnership as a whole. Plaintiffs concede that their injuries are the same as those sustained by the limited partners who were not parties to the suit. Indeed, the second amended complaint sought recovery for all limited partners "including plaintiffs."

Plaintiffs' complaint therefore did not state a claim for direct or individual harm. In pleading that defendants breached their fiduciary duty to the partnership, plaintiffs brought a derivative action on the partnership's behalf. See *LID Associates*, 324 Ill. App. 3d at 1069-70, 756 N.E.2d at 885, citing *Frank v. Hadesman & Frank, Inc.*, 83 F.3d 158, 160 (7th Cir. 1996) (interpreting Illinois law). Plaintiffs admit that all limited partners were similarly harmed by defendants' conduct. When investors sustain a common injury, they must act collectively. *Frank*, 83 F.3d at 160. Plaintiffs alleged no distinct individual harm that was not also borne by the other limited partners. Plaintiffs' claim that Morton and DeGraff converted partnership assets and profits and that plaintiffs' damages include the loss of those funds is derivative in nature. See *Litman*, 611 A.2d at 15-16.

We next address whether individual claims and derivative claims are mutually exclusive and if a single complaint can include each type of claim. Plaintiffs argue they were injured by defendants' breach of fiduciary duty to the partnership and also were "personally damaged." Plaintiffs couch the allegations of their complaint in terms of both direct harm and derivative harm (*e.g.*, "[d]efendants *** owed the Partnership and each of the plaintiffs a fiduciary duty").

12

1-04-2354

Direct and derivative claims can arise from the same nucleus of facts, and it certainly is possible for plaintiffs to bring, in one complaint, a direct claim for their individual damages and a derivative claim on behalf of the partnership, provided that sufficient facts are alleged in support of each theory. As we have discussed, whether an action is derivative or direct turns on whether the partnership or the individual partner has been injured. See *Sterling Radio Stations, Inc. v. Weinstine*, 328 Ill. App. 3d 58, 62, 765 N.E.2d 56, 60 (2002) (applying rule in analogous corporate setting). This court has recognized, in a case involving corporate shareholders, that both a direct and a derivative action can be stated under one set of facts:

> "In Illinois, a shareholder may bring a derivative action and an individual claim at the same time *if he has suffered a different injury from his fellow shareholders*. Thus, 'where the wrongful acts are not only against the corporation but are also violations of a duty *** owed directly by the wrongdoer to the stockholders,' a stockholder may sue both derivatively and individually to obtain redress for these wrongs." (Emphasis added.) *Levy v. Markal Sales Corp.*, 268 Ill. App. 3d 355, 371, 643 N.E.2d 1206, 1218 (1994), quoting *Zokoych v. Spalding*, 36 Ill. App. 3d 654, 663, 344 N.E.2d 805 (1976).

Plaintiffs have alleged that defendants harmed the partnership and that they, as limited partners, were damaged as a result. Plaintiffs' injuries were the same as those sustained by the other limited partners, and plaintiffs did not allege any individual harm that would support a direct action against defendants, in addition to their derivative claim.

As a final note, we address the statute's demand requirement. Section 1001 of the Illinois

13

act permits derivative actions by limited partners or assignees only when "general partners with authority to do so have refused to bring the action or unless an effort to cause those general partners to bring the action is not likely to succeed." 805 ILCS 210/1001 (West 2000). Section 1003, as with the corresponding Nevada statute, requires the complaint to indicate that the plaintiffs attempted to have a general partner initiate the legal action or explain why no such attempt was made. 805 ILCS 210/1003 (West 2000); Nev. Rev. Stat. Ann. § 88.610 *et seq.* (Michie's 2004). Here, defendants raised as an affirmative defense that plaintiffs did not comply with section 1003 and thus "deprived Defendants of their chance to resolve Plaintiffs' claims within the Limited Partnership or to test such allegation in a timely manner."

Plaintiffs stated in their complaint that any effort to cause a general partner, *i.e.*, Morton or DeGraff, to bring the action was not likely to succeed. Although the complaint did not contain plaintiffs' reasoning for failing to make such a demand, section 1001 is meant to address situations such as this. It would have been futile for plaintiffs to have requested that Morton or DeGraff sue themselves and the corporate general partner, Late Night Las Vegas, Inc. See *Hirsch v. Jones Intercable, Inc.*, 984 P.2d 629, 635-36 (Colo. 1999) (demand requirement futile when made of those who committed alleged breach). But see *Cabaniss v. Deutsche Bank Securities, Inc.*, 170 N.C. App. 180, 183, 611 S.E.2d 878, 881 (N.C. 2005) (potential futility of asking managers to bring action against themselves is insufficient excuse for failure to make demand under section 1001 when partnership agreement disclosed conflicts of interest or self-dealing).

In summary, plaintiffs' theory of direct relief against defendants is unsuccessful because

plaintiffs suffered no harm distinct from that sustained by the limited partners who were not parties to the lawsuit. Instead, the complaint adequately set out a derivative action on behalf of the Late Night Las Vegas Limited Partnership for damages to the partnership. However, even if plaintiffs' complaint sufficiently stated a derivative claim, we must consider defendants' contention that the trial court's judgment must be reversed because plaintiffs failed to join the partnership as a party to their action.

II. Was the Limited Partnership a Necessary Party to Plaintiffs' Derivative Claim?

Plaintiffs' complaint alleged a derivative claim on behalf of the Late Night Las Vegas Limited Partnership. Defendants argue that because plaintiffs failed to join the partnership as a party, this court must reverse the trial court's judgment.

The absence of a necessary party may be raised at any time. *Allied American Insurance Co. v. Ayala*, 247 Ill. App. 3d 538, 543-44, 616 N.E.2d 1349, 1355 (1993). The record reveals that the trial court did not decide the limited partnership's status as a necessary party before trial because the court barred defendants from moving to dismiss plaintiffs' second amended complaint. Notably, defendants' motion was made on the eve of trial. After that ruling by the trial court, defendants answered the complaint and raised as an affirmative defense, among other theories, that the limited partnership was a necessary and indispensable party to the suit. In its judgment, the trial court ruled that plaintiffs adequately represented the limited partnership's interests and that the partnership was not a necessary party.

On appeal, plaintiffs first contend that the applicable statute does not require that the

limited partnership be a party to a derivative claim by a limited partner. Plaintiffs refer to section 1002 of the Illinois Act, titled "Proper Plaintiff," which states, in pertinent part:

"No action shall be brought by a partner[] or assignee *** in the right of a limited partnership unless, at the time of bringing the action, the plaintiff was a partner or assignee ***." 805 ILCS 210/1002 (West 2000).

Plaintiffs argue that by defining the "proper plaintiff" in a derivative action as a "partner or assignee," the legislature necessarily indicated, by omission, that the limited partnership was not a necessary party. Plaintiffs contend that because section 1002 states that an action shall be brought "in the right of a limited partnership," the partnership is represented in the derivative suit by the limited partner or partners and thus is not a necessary party. Plaintiffs also assert that in a successful derivative action, a prevailing plaintiff is to remit the proceeds of the suit to the partnership, less reasonable expenses and attorney fees. 805 ILCS 210/1004 (West 2000). Plaintiffs contend that provision further eliminates the need to make the limited partnership a party to a derivative action because any recovery from such a suit is returned to the partnership.

We note that the trial court agreed with these arguments in its written ruling; however, our review of this legal question is *de novo*. *Eden Retirement Center*, 213 Ill. 2d at 284, 821 N.E.2d at 246. First addressing plaintiffs' contentions based on section 1002, we interpret that section to refer to the proper plaintiff to bring a derivative action and to indicate that the plaintiff in a derivative suit must be someone with a financial interest in the partnership, *i.e.*, a partner or a partner's assignee. We further interpret the language specifying the derivative nature of the partner's claim – "*in the right of* a limited partnership" – to denote the statute's applicability to a

derivative action, as opposed to a direct action. Thus, this section does not eliminate the need to name a limited partnership where it is a necessary party.

Furthermore, because plaintiffs' arguments involve a uniform act, and given the dearth of Illinois cases interpreting the statute, we note the decisions of other states' courts on this point. The 11th Circuit Court of Appeals, interpreting Florida's statute, has considered and rejected an argument similar to that raised by plaintiffs in *Bivens Gardens Office Building, Inc. v. Barnett Banks of Florida, Inc.*, 140 F.3d 898, 909-10 (11th Cir. 1998).[1] In that case, the appeals court considered whether the federal district court properly dismissed a limited partner's derivative claim because the partnership was an indispensable party. The limited partner argued that the partnership need not be named as a party because the Florida statute did not "expressly require it." *Bivens Gardens*, 140 F.3d at 910. Rejecting that contention, the appeals court stated that the limited partner "was required to name [the partnership] in order to plead a proper derivative action even absent a statutory requirement." *Bivens Gardens*, 140 F.3d at 910.

As we have observed, derivative actions in limited partnership situations arose from the advent of corporate shareholders' derivative suits. See *M.D. Building Material*, 219 Ill. App. 3d at 515, 579 N.E.2d at 1062. The United States Supreme Court, in the case of a shareholder

---

[1] The Florida statutes at issue in *Bivens Gardens* are equivalent to sections 1001 and 1002 of the Illinois act. See Fla. Stat. Ann. §§ 620.163, 620.164 (West 2001).

derivative suit, has stated:

> "The claim pressed by the stockholder against directors or third parties 'is not his
>
> own but the corporation's.' [Citation.] The corporation is a necessary party to the
>
> action; without it the case cannot proceed. Although named as a defendant, [the
>
> corporation] is the real party in interest, the stockholder being at best the nominal
>
> plaintiff." *Ross v. Bernhard*, 396 U.S. 531, 538, 24 L. Ed. 2d 729, 736, 90 S. Ct.
>
> 733, 738 (1970).

Illinois courts have reached the same conclusion in corporate cases. *Feen v. Ray*, 109 Ill.

2d 339, 344-45, 487 N.E.2d 619, 621 (1985); *Kalabogias v. Georgou*, 254 Ill. App. 3d 740, 747,

627 N.E.2d 51, 56-57 (1993) (corporation is necessary party to shareholder derivative action;

recovery runs to it and not to shareholders); *Bingham v. Ditzler*, 320 Ill. App. 88, 92, 49 N.E.2d

812, 813 (1943) (stockholder commences suit on behalf of corporation, which is "indispensably

necessary party" (emphasis omitted)).

Extending that reasoning to cases involving partnerships, several federal courts have held

that a limited partnership is a necessary party to a derivative action brought by a limited partner.

See *New York Life Insurance Co. v. Ramco Holding Corp.*, 938 F. Supp. 754, 755-56 (N.D.

Okla. 1996); *Moore*, 919 F. Supp. at 1009-10; *Wallner*, 22 Cal. App. 4th at 1449, 27 Cal. Rptr.

2d at 836; *Lenz*, 833 F. Supp. at 378.

The *Wallner* court explained:

> "Like a shareholder's derivative action, a limited partner's derivative suit is filed
>
> in the name of the limited partner, and the partnership is named as a defendant.

Although a limited partner is named as the plaintiff, it is the limited partnership

which derives the benefits of the action." *Wallner*, 22 Cal. App. 4th at 1449, 27

Cal. Rptr. 2d at 836.

Also, in *Smith v. Bader*, 458 F. Supp. 1184, 1187 (S.D.N.Y. 1978), the United States

District Court for the Southern District of New York ordered the plaintiff limited partners to join

the partnership to a derivative suit, stating:

"The Partnership is an indispensable party to this action for reasons analogous to a

corporation being an indispensable party in a shareholders' derivative action

[citing United States Supreme Court's opinion in *Ross*]. If the general partner has

converted the corporate assets or opportunities of the Partnership, it is the

Partnership which has the primary interest; the limited partner has no property

interest in the assets of the partnership, but only a right to share in the profits.

[Citation.] Furthermore, much of the relief sought by the plaintiffs would have a

direct effect on the Partnership and its assets: e.g., rescission of the sale of the

limited partnership units and the appointment of a receiver to operate the business

of the Partnership. The protection of such interests may be impeded in the

Partnership's absence from this action since both the plaintiffs and defendants are

necessarily primarily concerned with protecting their own interests, which may

not, in all instances, coincide with those of the Partnership. In addition, the

defendants [who in *Smith* included the general partner] may be open to double,

multiple or otherwise inconsistent obligations since plaintiffs do not represent all

the limited partnership interests.  The addition of the Partnership to this action would effectively eliminate this possibility.  Since it is alleged that the Partnership is in antagonistic hands, it should properly be added as a party defendant to this action."

These cases illustrate the prevailing opinion that a limited partnership should be named as a party defendant to a derivative action brought by one or more limited partners.  However, we observe that one federal appeals court has reached the opposite conclusion, reversing a district court's judgment that the partnership was an indispensable party and holding that because all limited partners were before the court, it was not necessary for the partnership to be joined:

"[A partnership's] interests must ultimately derive from the interests of the human beings that are its members ***.  A partnership's interests as an entity consist of an aggregation of those interests of each of the individual partners that are relevant to the purpose of the partnership.  Thus, at least in certain cases, it is possible that a partnership's interests can be effectively represented in litigation by participation of its partners."  *HB General Corp. v. Manchester Partners, L.P.*, 95 F.3d 1185, 1193 (3rd Cir. 1996).

In the instant case, defendants contend the partnership was a necessary party because only it could represent the rights of all the limited partners and bind them to a settlement.  Defendants argue that the trial court could not cure plaintiffs' failure to name the partnership as a party by granting it relief in its absence, *e.g.*, ordering defendants to return management fees to the partnership.

1-04-2354

Plaintiffs respond that the partnership was not a necessary party because as a group of limited partners, they adequately represented the partnership's interests. Plaintiffs cite the cases on which the trial court relied, most prominently *Cales v. Dressler*, 315 Ill. 142, 149, 146 N.E. 162, 165 (1924), in which the Illinois Supreme Court stated, in the context of a will dispute, that "[w]here parties are effectively represented they need not be made parties." Plaintiffs argue that by seeking damages for defendants' breach of fiduciary duty, they, as individual limited partners, sought relief for the benefit of the partnership.

Illinois courts have defined a necessary party as one with a legal or beneficial interest in the litigation that will be affected by the court's actions. *Boyd Electric v. Dee*, 356 Ill. App. 3d 851, 859, 826 N.E.2d 493, 500 (2005), quoting *Holzer v. Motorola Lighting, Inc.*, 295 Ill. App. 3d 963, 970, 693 N.E.2d 446 (1998). A party is necessary when its presence is required for one of three reasons: (1) to protect an interest in the controversy that would be materially affected by a judgment entered in its absence; (2) to protect the interests of those who are before the court; or (3) to enable the court to make a complete determination of the controversy. *Boyd Electric*, 356 Ill. App. 3d at 859, 826 N.E.2d at 500. Fundamental principles of due process prevent the entry of a judgment that affects a right or interest of a party not before the court. *Feen*, 109 Ill. 2d at 344, 487 N.E.2d at 621-22; *Tsuetaki v. Novicky*, 158 Ill. App. 3d 505, 513, 509 N.E.2d 1019, 1026 (1983).

Having considered the three potential reasons for the necessity of the limited partnership's presence in this action, we conclude that none of those reasons warrants reversal of the trial court's judgment for the failure to join the limited partnership as a party. As to whether

21

the limited partnership's interest in the suit was materially affected by the judgment entered without it as a party or whether the limited partnership's presence was necessary to protect the interests of those before the court, the trial court granted relief to the limited partnership by ordering the general partners to return management fees to the limited partnership and also by imposing a constructive trust on certain funds for the benefit of the limited partnership. The party to be compensated in a derivative action is the partnership, with the limited partners who bring the suit acting as the nominal plaintiffs. See *Ross*, 396 U.S. at 538, 24 L. Ed. 2d at 736, 90 S. Ct. at 738; *Wallner*, 22 Cal. App. 4th at 1449-50, 27 Cal. Rptr. 2d at 836. As the cases discussed above illustrate, even though the partnership's interests often are aligned with those of the plaintiff limited partners, the partnership is named as a defendant. Although the limited partnership was not named as a party defendant in plaintiffs' complaint, the defendant general partners, against whom the judgment was entered, were afforded due process. Defendants were given notice of the action against them and were fully represented in the court proceedings. For this court to negate the substantial work of the trial court based on the absence of the limited partnership as a party would elevate form over substance.

Moreover, the limited partnership's absence did not prevent the court from engaging in a complete determination of the controversy. Defendants' argument to the contrary is based on the positions of the absent limited partners, and defendants momentarily contend in their reply brief that those limited partners also were necessary party plaintiffs to this action. However, defendants do not appear to argue that the absent partners should be named as parties but rather that if the partnership was made a party, the remaining partners would be represented via the

22

partnership's presence in the suit.

We conclude that the absent limited partners were adequately represented, albeit under a different theory than that offered by defendants. Under the doctrine of representation, absent parties need not be joined when their interests are effectively protected by those in the suit. *Holzer*, 295 Ill. App. 3d at 972, 693 N.E.2d at 453. In bringing a derivative action, plaintiffs sought to protect the financial interests of all of the limited partners, and privity exists between parties who adequately represent the same legal interests. See *Schnitzer v. O'Connor*, 274 Ill. App. 3d 314, 326, 653 N.E.2d 825, 833 (1995) (plaintiffs in shareholder derivative action had same interest as separate group of plaintiff shareholders, *i.e.*, recovery to the corporation and its shareholders for the defendant directors' breach of their duties). The absent limited partners share the same interest in this derivative suit as plaintiffs, who sought recovery for the partnership. Therefore, the absent limited partners are not necessary parties to the derivative action brought by plaintiffs. Moreover, the failure to name the partnership as a party defendant did not prevent the court from fully resolving the case.

### III. The Trial Court's Additional Rulings

### A. *Management Fees*

Defendants next argue that the trial court erred in ordering them to return $833,190 in management fees to the limited partnership to compensate for funds that Morton and DeGraff earned as general partners between 1997 and 2000, the period when the trial court found defendants to be in breach of their fiduciary duty to the partnership. Defendants assert that

23

although preliminary discussions with Grand Plaza occurred in September 1997, defendants could not have breached their duty to plaintiffs until October 14, 1997, when they informed the limited partners of the proposed transaction. Plaintiffs respond that the award of management fees was not manifestly erroneous, and they argue that defendants' actions in September and October 1997 were not the sole basis for the trial court's finding of a breach of fiduciary duty.

As the trial court observed in its opinion, and as defendants do not dispute, a breach of fiduciary duty requires the complete forfeiture of all compensation during the period of the breach, and the appropriate remedy for such a breach is left to the equitable discretion of the trial court. See *LID Associates*, 324 Ill. App. 3d at 1071, 756 N.E.2d at 886. The trial court stated that defendants' breach of fiduciary duty "extended through the period 1997-2000" during which defendants took $833,190 as "management fees."

Defendants acknowledge that a trial court's findings of fact are to be disturbed on review only if they are against the manifest weight of the evidence, meaning when the findings appear to be arbitrary or not based on the evidence, leaving the opposite conclusion apparent. See *Corral v. Mervis Industries, Inc.*, 217 Ill. 2d 144, 154-55, 839 N.E.2d 524, 530-31 (2005). That standard reflects the role of a reviewing court, which is to not substitute its judgment for that of the trier of fact. *Corral*, 217 Ill. 2d at 155, 839 N.E.2d at 531. In the case at bar, the evidence does not contradict the trial court's ruling that defendants were not entitled to management fees for the period of 1997 through 2000. The court based its finding that defendants breached their fiduciary duty to plaintiffs, in part, on defendants' failure to disclose their deal with Grand Plaza

24

to the limited partners at the meeting on October 14, 1997. The court also cited the $900,000 in

extension fees that defendants received from Grand Plaza as further evidence of a breach.

Defendants argue that they were entitled to keep management fees that they earned in

1997 until October 14, and defendants contend the trial court did not state that defendants should

forfeit all management fees received in that calendar year. However, the failure to disclose the

terms of the Grand Plaza deal to the limited partners at the October 1997 meeting did not mark

the point of defendants' breach of their fiduciary duty to the partnership. The discussions that

preceded the formal agreement with Grand Plaza necessarily occurred before the October 1997

meeting with the limited partners. Indeed, the record includes an affidavit in which Morton and

DeGraff state that they were "approached" by Grand Plaza in the spring of 1997 about a potential

property deal. The trial court's decision to deny defendants management fees for the entire 1997

calendar year was not contrary to the manifest weight of the evidence.

B. *Punitive Damages*

Defendants' final contention on appeal is that the trial court erred in granting plaintiffs $1

million in punitive damages. Punitive damages can be awarded when a tort is committed with

fraud, actual malice or deliberate violence or oppression, or when the defendant or defendants

act willfully or with such gross negligence as to display a wanton disregard for others. *Lowe*

*Excavating Co. v. International Union of Operating Engineers Local No. 150*, 358 Ill. App. 3d

1034, 1039, 832 N.E.2d 495, 500 (2005). Because punitive damages are not favored in the law

and due to their penal nature, courts must ensure that punitive damages are not awarded

improperly or without consideration. *Lowe Excavating*, 358 Ill. App. 3d at 1039, 832 N.E.2d at 501; *Franz v. Calaco Development Corp.*, 352 Ill. App. 3d 1129, 1137, 818 N.E.2d 357, 366 (2004).

In reviewing a trial court's decision to award punitive damages, this court takes a three-step approach, considering: (1) whether punitive damages are available for the particular cause of action, using a *de novo* standard; (2) whether, under a manifest weight of the evidence standard, the defendant or defendants acted fraudulently, maliciously or in a manner that warrants such damages; and (3) whether the trial court abused its discretion in imposing punitive damages. *Lowe Excavating*, 358 Ill. App. 3d at 1039, 832 N.E.2d at 501. As to the first consideration, it is undisputed that punitive damages are appropriate to punish and deter the conduct of a defendant who has intentionally breached a fiduciary duty, particularly when in a position of trust and confidence. *Dowd & Dowd, Ltd., v. Gleason*, 352 Ill. App. 3d 365, 387-88, 816 N.E.2d 754, 773 (2004).

Turning to the second factor, we review the trial court's reasons for imposing punitive damages to determine if its judgment that defendants acted fraudulently, maliciously or in a manner warranting punitive damages was contrary to the manifest weight of the evidence. The trial court stated in its order that Morton and DeGraff did not tell the limited partners "about the parts of the [Grand Plaza] deal they were keeping for themselves."

Defendants first assert, however, that they disclosed to the limited partners the terms of the transaction with Grand Plaza, including the extension fees that Morton and DeGraff would retain. Defendants argue that they reasonably believed the extension fees were rightfully theirs

and were not intended for the partnership. Defendants further maintain that because the Grand

Plaza deal was never consummated, the partnership did not sustain a "loss." They argued that, to

the contrary, Drink continued to operate to the partnership's benefit until the changing Las Vegas

club scene led to its financial losses and eventual demise.

The trial court also stated that Morton and DeGraff concealed their use of $3 million in

earnest money in the Grand Plaza deal. In an affidavit included in the record, Morton and

DeGraff attest that they "did not use earnest money from Grand Plaza to purchase the [Drink

land] but rather obtained a loan." Defendants contend they did not hide from the partnership

their use of the $3 million earnest money from Grand Plaza to exercise the option with Air

Storage and buy the Drink land. Plaintiffs respond that defendants attempt to maintain two

inconsistent facts: (1) the limited partners knew that defendants used the $3 million to purchase

the Drink property; and (2) defendants truthfully stated in their affidavit that they did not use the

earnest money to buy the land.

The trial court made the following findings of fact. Morton and DeGraff personally

owned the option to purchase the Drink land and had acquired that option before the partnership

was formed. The partnership owned the leasehold on the Drink property and was required to

relinquish that leasehold for the Grand Plaza deal to be completed. Defendants received $3.25

million from Grand Plaza upon executing the purchase agreement, which the agreement called a

"loan." Defendants argue that the money was a loan because when the purchase agreement was

cancelled, the money was refunded to Grand Plaza.

"The fiduciary nature of the partnership relation requires at all times the highest degree of

good faith, and precludes any secret profit, benefit or advantage of any kind." 1 S. Rowley, Rowley on Partnership § 21.0, at 515 (1960). Whether the partnership sustained a measurable loss, and whether or not the limited partners were aware of such a loss, is not the test of whether defendants breached their fiduciary duty to the partnership. Such a breach occurred if defendants took for themselves money that properly belonged to the partnership, even if no "loss" was apparent to the limited partners.

Another reason the trial court expressed for granting punitive damages involved defendants' statements to the limited partners about legal representation for the partnership in the negotiations with Grand Plaza. The trial court found that Morton and DeGraff falsely told the limited partners that the attorney negotiating with Grand Plaza represented the limited partnership; the attorney actually represented Morton and DeGraff as the general partners. The trial court found that contrary to Morton and DeGraff's representations, the limited partnership was unrepresented in the talks with Grand Plaza.

Defendants attempt to downplay their conduct by arguing that several limited partners retained one attorney to represent their interests in the Grand Plaza transaction and that the majority of the limited partners voted to proceed with the deal because it was potentially lucrative. Defendants further contend that counsel for the partnership "might have been important" if the limited partners were asked to "give something up" in the Grand Plaza transaction. However, defendants do not contest that they told the limited partners that the limited partnership was represented in the talks with Grand Plaza when that was not the case. The trial court's award of punitive damages on this basis was not against the manifest weight of

28

1-04-2354

the evidence.

Lastly, under the third step set out in *Lowe*, we do not find that the trial court abused its discretion in assessing punitive damages in this case. A trial court does not abuse its discretion unless no reasonable person could assume its view. *Franz*, 352 Ill. App. 3d at 1148, 818 N.E.2d at 375. The trial court correctly noted in its judgment that the purposes of a punitive damages award are retribution against the wrongdoer and deterrence of similar conduct by that party and by others in general, and the court stated that its order against defendants served those needs. The court also found substantial damages were necessary in this case due to the amount of money involved in the transactions. The court did not abuse its discretion in awarding $1 million in punitive damages against defendants. Therefore, based on the three-step test set out in *Lowe*, we affirm the trial court's award of punitive damages.

IV. Modification of Compensatory and Punitive Damages Awards

Plaintiffs ask this court to amend the compensatory and punitive damages awards, pursuant to Supreme Court Rule 366(a) (155 Ill. 2d R. 366(a)), to exclude defendants from receiving any part of the awards as the partnership's general partners. Plaintiffs assert that if the court's judgment is not modified to prevent defendants from sharing in the proceeds, defendants will benefit from their own wrongdoing. Plaintiffs request that we amend the trial court's order to state that the award should be distributed only to the limited partners.

Defendants respond that plaintiffs waived this request by failing to seek relief in the trial court via a posttrial motion to modify the judgment, and they argue that the trial court's order did

29

not address the distribution of the award to the partnership aside from the issue of the approximately $833,000 in management fees.

Nevertheless, even if plaintiffs did not bring this issue to the trial court's attention, waiver is customarily considered an admonition to the parties and not a hindrance to a reviewing court's ability to address issues of law. See, *e.g.*, *Demos v. Ferris-Shell Oil Co.*, 317 Ill. App. 3d 41, 48, 740 N.E.2d 9, 14-15 (2000). This approach is particularly appropriate when the argument involves Rule 366(a), which allows this court numerous general discretionary powers, including the ability to address certain matters *sua sponte*. 155 Ill. 2d R. 366(a). Defendants offer no substantive response to the doctrine that a fiduciary should not benefit from its own wrongdoing. Accordingly, the trial court's order is modified to state that defendants are to receive no part of the compensatory and punitive damages awarded to the partnership.

CONCLUSION

In summary, plaintiffs' second amended complaint alleged a derivative, not a direct, action against defendants on behalf of the Late Night Las Vegas Limited Partnership. Although the limited partnership was a necessary party to plaintiffs' derivative claim, we conclude that the due process rights of the partnership were not prejudiced by plaintiffs' failure to name the partnership and that no practical purpose would be served by reversing the trial court's ruling simply to allow plaintiffs to name the limited partnership as a party defendant. Thus, the judgment of the trial court is affirmed. Furthermore, the trial court's ruling as to the management fees retained by Morton and DeGraff and the court's assessment of $1 million in punitive

30

damages were not contrary to the manifest weight of the evidence and are therefore affirmed.  In addition, the trial court's order is modified to state that defendants are to receive no part of the compensatory and punitive damages awarded to the partnership.

Affirmed as modified.

O'BRIEN and NEVILLE, JJ., concur.