2020 IL App (1st) 181183-U

No. 1-18-1183

Second Division
September 30, 2020

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| CLAUDE PISTONE, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee/Cross-Appellant, | ) | Cook County. |
| | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DAVID CARL, an Individual and d/b/a | ) | |
| DACLA BUILDING, LLC, an Illinois | ) | No. 15 L1 0600 |
| corporation; and P&S AUTO PARTS, INC., | ) | |
| an Illinois corporation, | ) | |
| | ) | |
| Defendants-Appellants, | ) | |
| | ) | |
| (David Carl and DACLA Building, LLC, | ) | Honorable |
| Defendants-Appellants/Cross- | ) | Thomas R. Mulroy, Jr., |
| Appellees). | ) | Judge, presiding. |
| | ) | |

_____

JUSTICE COBBS delivered the judgment of the court.
Justices McBride and Ellis concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The trial court's judgment is affirmed. As to defendant's appeal, the trial court correctly (1) awarded compensatory damages to DACLA, (2) awarded punitive damages to plaintiff, and (3) denied defendant's counterclaim for *quantum meruit*. As to plaintiff's cross-appeal, the trial court correctly (1) denied plaintiff further compensatory damages and (2) granted defendant a set-off.

¶ 2    This appeal stems from a dispute in a decades-long business relationship between plaintiff, Claude Pistone, and defendant, David Carl[1], who were joint owners of DACLA Building, LLC (DACLA), a limited liability company that managed rental real estate. In 2015, plaintiff sued defendant for breach of fiduciary duty in managing DACLA and defendant later filed a counterclaim. Following a bench trial, the trial court found defendant liable for $134,737.66 in compensatory damages and, after granting a set-off in the amount of $72,000, ordered defendant to pay DACLA the balance of $62,737.66. The trial court also awarded plaintiff $40,000 in punitive damages.

¶ 3    Both parties appeal from the trial court's judgment. Defendant argues that the trial court erred in awarding compensatory damages to DACLA and punitive damages to plaintiff and in not awarding damages to defendant on his counterclaims. In his cross-appeal, plaintiff argues that the trial court did not award him the full compensatory damages that he was owed and erred in awarding defendant a set-off. For the following reasons, we affirm.

¶ 4                                  I. BACKGROUND

¶ 5                            A. Complaint and Counterclaim

¶ 6    On October 19, 2015, plaintiff filed a two-count complaint against Carl, DACLA, and P&S Auto Parts, Inc. (P&S Auto). The complaint requested a formal accounting of all money received, spent, and distributed since 1987 and alleged that defendant breached his fiduciary duty by

---

[1] Though the named defendants in this action are both Carl and DACLA, we refer to them separately, for clarity, as the parties have also done in their briefs.

"converting for his own benefit and use no less than [$500,000] to the detriment and damage of [plaintiff]." By way of relief, plaintiff requested $500,000 in compensatory damages and $1,000,000 in "exemplary" damages.

¶ 7   In response, defendant filed an amended counterclaim alleging: (1) breach of fiduciary duty (2) breach of contract; (3) *quantum meruit* for defendant's management services; and (4) a set-off for any damages owed to plaintiff. Defendant also asserted the following affirmative defenses: (1) plaintiff has been paid for his interest in DACLA; (2) abandonment and forfeiture; (3) breach of contract; (4) statute of repose; (5) laches; and (6) defendant is protected by the business judgment rule. In his answer to the amended counterclaim, plaintiff denied each of the affirmative defenses.

¶ 8                                         B. Bench Trial

¶ 9   The action proceeded to a bench trial on March 6, 2018, during which the following evidence was adduced.

¶ 10   Prior to 1983, plaintiff worked as a salesman for P&S Auto. Defendant served as both the accountant for P&S Auto and as plaintiff's personal accountant. In 1983, defendant and plaintiff purchased P&S Auto from plaintiff's brother-in-law, Phil Mercurio, with defendant owning 90% and plaintiff owning the remaining 10%. In 1987, they purchased the property on which P&S Auto was located, 6542-48 Milwaukee Avenue (the Milwaukee Avenue property), with each owning 50% of the property individually. The property was held in a land trust administered by Parkway Bank & Trust. The DACLA partnership was formed in 1987 when the Milwaukee Avenue property was purchased, but it was restructured as a limited liability company in 2007. The purpose of DACLA was to maintain and manage the property on which P&S Auto was located.

¶ 11   In 2001, both defendant and plaintiff signed documents for a line of credit from First Equity Bank secured by a mortgage on the Milwaukee Avenue property. As such, both parties became

joint debtors on the loan. The loan was solely for the benefit for P&S Auto and was to be used to purchase inventory so that P&S Auto could have buyer's appeal to NAPA Auto Parts. The line of credit was up to $249,000, but the total in withdrawals reached $278,975. Defendant was the only person who made withdrawals on the loan. DACLA made payments to P&S Auto, which then made payments on the loan to First Equity Bank, such that DACLA's funds were used to pay P&S Auto's obligations. Plaintiff admitted that he did not know any of the details of the loan or the payments and that he simply signed the documents defendant asked him to sign. Defendant sent plaintiff Schedule K-1 tax documents annually reporting income from DACLA.

¶ 12    In 2003, defendant purchased plaintiff's 10% interest in P&S Auto, making defendant the sole owner. In 2005, defendant sold P&S Auto to NAPA Auto Parts. NAPA then paid monthly rent to DACLA as a tenant of the Milwaukee Avenue property.

¶ 13    From 2008 to 2015, defendant withdrew $123,237.66 from DACLA for his own personal use, such as purchasing a grill and a Sam's Club membership. He also used the funds to pay his property taxes, credit cards, and insurance. Defendant testified that he considered these expenses to be his "management fee," though there was no written agreement that he would receive a management fee. DACLA never issued defendant a 1099 tax form for these personal expenses and defendant did not include this information on DACLA's or his own tax returns.

¶ 14    In September 2015, defendant instructed plaintiff to sign documents with First Equity Bank that would extend the 2001 line of credit, but plaintiff refused to do so upon the advice of his lawyer. The failure to extend the line of credit triggered a default and an acceleration of the joint debt. Defendant extinguished the joint debt by taking out a personal loan of $72,000. Defendant later withdrew $11,500 from DACLA in order to partially repay himself for extinguishing the joint debt.

¶ 15                    C. Trial Court's Ruling

¶ 16    On May 8, 2018, the trial court issued a written order finding that defendant breached his fiduciary duty by withdrawing from DACLA $123,237.66 for personal expenses and $11,500 to pay his personal loan. In so finding, the court rejected defendant's argument that the money he took from DACLA should be considered a "management fee" for his services.[2]

¶ 17    As for damages, the court found that defendant was liable in the amount of $134,737.66, but that a set-off was appropriate based on the $72,000 defendant paid on the joint debt. Accordingly, the court awarded $62,737.66 in compensatory damages to DACLA. The court also awarded $40,000 in punitive damages to plaintiff for defendant's breach of fiduciary duty.

¶ 18    Defendant filed his notice of appeal on June 5, 2018, and plaintiff filed his notice of cross-appeal on June 14, 2018.

¶ 19                        II. ANALYSIS

¶ 20                A. Compliance with Supreme Court Rules

¶ 21    As an initial matter, we must address both parties' complete disregard of our supreme court's rules governing the form and substance of briefs in the appellate court. Illinois Supreme Court Rule 341(h)(7) requires an appellant to cite relevant legal authority in support of his arguments on appeal. " '[A] reviewing court is entitled to have the issues on appeal clearly defined with pertinent authority cited and a cohesive legal argument presented. The appellate court is not a depository in which the appellant [and cross-appellant] may dump the burden of argument and research.' " *In re Marriage of Auriemma*, 271 Ill. App. 3d 68, 72 (1994) (quoting *Thrall Car*

---

[2] The court made no ruling on count I of plaintiff's complaint for Accounting, and plaintiff has presented no claims on appeal regarding the matter.

*Manufacturing Co. v. Lindquist*, 145 Ill. App. 3d 712, 719 (1986)). Failure to cite to relevant authority results in forfeiture of those arguments. *Id.*

¶ 22    Here, the citations to legal authority in the parties' briefs are few and far between. The citations included in the briefs are limited to authority for the standards of review and the boilerplate elements of their claims. See *Robinson v. Point One Toyota, Evanston*, 2012 IL App (1st) 111889, ¶ 54 ("Citations to authority that set forth only general propositions of law and do not address the issues presented do not constitute relevant authority for purposes of Rule 341(h)(7)."). We would remind both parties that Supreme Court Rules are not merely aspirational; they carry the force of law. *Applebaum v. Rush University Medical Center*, 231 Ill. 2d 429, 447 (2008). Notwithstanding these deficiencies, we choose to address the parties' claims on the merits because the issues involved are reasonably straightforward and based on settled law. See *Pedersen v. Village of Hoffman Estates*, 2014 IL App (1st) 123402, ¶ 44 (noting that "[f]orfeiture *** is a limitation on the parties and not on this court"). However, we strongly admonish the parties to submit thoroughly researched briefs with citations to authority in the future to avoid having their briefs struck or their appeal dismissed.

¶ 23                    B. Nature of DACLA

¶ 24    Central to our analysis of the issues involved in this appeal and cross-appeal is a proper understanding of the nature and structure of DACLA. DACLA operates as a limited liability company and, accordingly, is governed by the Illinois Limited Liability Company Act (the Act) (805 ILCS 180/1-1 *et seq*.) (West 2014)), which Illinois enacted in 1994. The Act authorizes "a hybrid form of business organization which permits its members to avail themselves of tax benefits similar to a partnership and of limited liability similar to the corporate form." *First Mid-Illinois Bank & Trust, N.A. v. Parker*, 403 Ill. App. 3d 784, 792 (2010) (citation omitted). Pursuant to the

Act, a limited liability company such as DACLA "is a legal entity distinct from its members" (805 ILCS 180/5-1(c) (West 2014)) and has the power to sue and be sued (805 ILCS 180/1-30(1) (West 2014)).

¶ 25 The operation of a limited liability company is generally contractual in nature and controlled by a written operating agreement. *Katris v. Carroll*, 362 Ill. App. 3d 1140, 1144 (2005) (stating that limited liability companies are creatures of statute); 805 ILCS 180/15-5(a) (West 2014) (stating that members of a limited liability company may enter into an operating agreement). However, where the operating agreement is silent or where, as here, there is no operating agreement, the relationship among the members, managers, and company are subject to the Act's default rules. 805 ILCS 180/15-5(a) (West 2014) ("To the extent the operating agreement does not otherwise provide, this Act governs relations among the members, managers, and company."); *Tully v. McLean*, 409 Ill. App. 3d 659, 668 (2011) (where the operating agreement is silent, we look to the Act). In accordance with the Act, because there is no operating agreement to state otherwise, DACLA is a member-managed limited liability company. 805 ILCS 180/15-1(a) (West 2014). Accordingly, each member, namely plaintiff and defendant, have "equal rights in the management and conduct of the company's business[.]" 805 ILCS 180/15-1(b)(1) (West 2014). With these provisions in mind, we now address the parties' arguments in their respective appeals.

¶ 26                                 C. Defendant's Appeal

¶ 27 Defendant argues that the trial court erred by: (1) awarding compensatory damages to DACLA where there was no claim filed on behalf of DACLA; (2) awarding punitive damages to plaintiff in the amount of $40,000 where the court did not award plaintiff any compensatory damages; and (3) failing to grant relief on his counterclaims. Plaintiff did not make any

counterarguments to these claims devoting the entirety of his response brief to his cross-appeal claims instead.

¶ 28                                        1. Compensatory Damages

¶ 29    Defendant first claims that the trial court erred in awarding compensatory damages to DACLA because DACLA was not a named plaintiff in the action. Defendant specifically contends that "there was no jurisdiction for this Court to award a monetary judgment to DACLA and against [defendant] because DACLA was not a party seeking relief pursuant to [plaintiff's] complaint." He further argues that "[n]o claims were brought derivatively by [plaintiff] on behalf of DACLA, and therefore, no judgments should have been entered in DACLA's favor on [plaintiff's] claims." Plaintiff does not dispute that he brought no claims on behalf of DACLA. He has maintained throughout that his claims against defendant were individual and the relief sought was for harms he suffered as an individual. Regardless, at the close of the evidence, the trial court awarded compensatory damages directly to DACLA.

¶ 30    We note again that defendant cites to no authority to support his argument, which spans only two paragraphs. See *Vancura v. Katris*, 238 Ill. 2d 352, 369-70 (2010) (finding that even an argument that is "developed beyond mere list or vague allegation may be insufficient if it does not include citations to authority."); *Vine Street Clinic v. HealthLink, Inc.*, 222 Ill. 2d 276, 301 (2006) (finding that a contention was not properly brought before the court where there was no citation to authority). Additionally, we note that plaintiff provides neither counterarguments nor any citations to authority to assist the court in our resolution of defendant's claims. This court may deem an argument forfeited for lack of development. *United City of Yorkville v. Fidelity and Deposit Company of Maryland*, 2019 IL App (2d) 180230, ¶¶ 127-28. Nonetheless, we elect to review the issue, and, for the following reasons, we affirm the trial court.

¶ 31    Illinois courts have ruled that both taxpayer derivative suits and limited partnerships are subject to the same treatment as corporate shareholder actions. *Feen v. Ray*, 109 Ill. 2d 339 (1985); *Caparos v. Morton*, 364 Ill. App. 3d 159, 167-68 (2006). Because the limited liability company is a hybrid of the corporation and limited partnership, it follows that it should be treated similarly. See *Bischoff v. Boar's Head Provisions Co., Inc.*, 436 F. Supp. 3d 626, 632 (S.D. NY. 2006). With passage of the Act, the concept of shareholder derivative actions has been "grafted on the limited liability company form." *Elf Atochem North America, Inc. v. Jaffari*, 727 A. 2d 286, 293 (Del. 1999). Thus, we apply the same principles regarding corporate shareholder derivative actions, as well as direct actions, to the claims involved here.

¶ 32    In the corporate context, a derivative action is "a device to protect shareholders against abuses by the corporation, its officers and directors, and is a vehicle to insure corporate accountability." *Brown v. Tenney*, 125 Ill. 2d 348, 355 (1988); see also *M.D. Bldg. Material Co. v. 910 Const. Venture*, 219 Ill. App. 3d 509, 515 (1991). "In a shareholder's derivative suit, the shareholder sues on behalf of the corporation for harm done to it[.]" *Spillyards v. Abboud*, 278 Ill. App. 3d 663, 670 (1996). On the other hand, for a plaintiff to sue individually, the plaintiff must allege a special injury: an injury that is separate and distinct from that suffered by other shareholders. *Id.* at 670-71. "Recovery in the former inures to the corporation while recovery in the latter inures to the individual shareholder or class of shareholders." *Id.* at 670.

¶ 33    "In Illinois, a shareholder may bring a derivative action and an individual claim at the same time[.]" *Levy v. Markal Sales Corp*, 268 Ill. App. 3d 355, 371 (1994); see also *Caulfield v. Packer Group, Inc.*, 2016 IL App (1st) 151558, ¶ 51. Resolution of the issues presented in this appeal require that we consider whether plaintiff's complaint properly alleges a derivative claim,

an individual claim, or both. Whether a suit is derivative or individual is a question of law, which we review *de novo*. *Caparos*, 364 Ill. App. 3d at 167.

¶ 34    Although the case caption in plaintiff's complaint does not identify DACLA as a plaintiff, and as we have noted above, plaintiff is adamant that his claims are not intended to be derivative, the court is not bound by the designations used by the parties in determining whether an individual or derivative claim is put forth. *Caparos*, 364 Ill. App. 3d at 167; see also *Spillyards*, 278 Ill. App. 3d at 671 (quoting *Lipton v. News International, PLC*, 514 A.2d 1075, 1078 (1986)) ("[A] court must look to 'the body of the complaint, not to the plaintiff's designation or stated intention.' "). Notwithstanding either party's characterization, to identify whether a plaintiff has brought a suit individually or derivatively, we "look at the gravamen of the pleadings to see whether the alleged injuries are against the plaintiff upon an individual claim, or an injury that affects shareholders indirectly or affects them as a whole." *In re Hearthside Baking Co., Inc.*, 402 B.R. 233 (N.D. Ill. 2009) (citing *Zokoych v. Spalding*, 36 Ill. App. 3d 654 (1976)); see also *Sterling Radio Stations Inc. v. Weinstine*, 328 Ill. App. 3d 58, 60 (2002) (stating that this determination "requires a strict focus on the nature of the alleged injury"); *Anglo American Sec. Fund, L.P. v. S.R. Global Intern. Fund, L.P.*, 829 A.2d 143, 150 (Del. Ch. 2003) (stating that the court must engage in a review of the complaint and determine from the pleadings whether the claims are direct or derivative).

¶ 35                                a. Derivative Claim

¶ 36    As a preliminary matter, we deem it appropriate to address the Act's requirement of a pre-suit demand. The issue of pre-suit demand was not raised below or here on appeal nor would it have been as it was not plaintiff's intent to bring a derivative suit and it was defendant's position that no derivative suit had been filed. Nevertheless, as we perceive the Act's pre-suit demand requirement to be in the nature of standing, we are inclined to address it here.

¶ 37    The Act expressly recognizes the right of a member to bring a derivative action on the right of the company, providing in pertinent part:

> "No action shall be brought by a member *** in the right of a limited liability company to recover a judgment in its favor unless members or managers with authority to do so have refused to bring the action or unless an effort to cause those members or managers to bring this action is not likely to succeed."

805 ILCS 180/40-1 (West 2014). The Act requires that a pleading for a derivative action "shall set forth with particularity the effort of the plaintiff to secure initiation of the action by the limited liability company or the reasons for not making the effort." 805 ILCS 180/40-10 (West 2014). In the corporate context, "[d]emand is excused where 'the majority of the directors are themselves involved in the matters complained of, so that it is evident that the demand would be unavailing.' " *Valiquet v. First Federal Sav. & Loan Ass'n of Chicago*, 87 Ill. App. 3d 195, 200 (1979) (quoting *Babcock v. Farwell*, 245 Ill. 14, 46 (1910)). Here, there are only two members of the LLC, both share an equal interest in DACLA, and the misconduct is directly alleged against defendant. In this case, any demand would have been futile as defendant would not have agreed to institute an action against himself. See *Caparos*, 364 Ill. App. 3d at 170. We turn now to the substance of plaintiff's complaint.

¶ 38    In addition to count I of the complaint in which plaintiff sought an accounting of DACLA's receipts and expenditures, plaintiff alleged that defendant "used and converted DACLA cash and assets to [defendant's] own personal use and benefit without authorization or permission from [plaintiff]." He claimed that he relied upon defendant for personal matters and DACLA matters, and thus, defendant "stood in a fiduciary relationship with [plaintiff]." He also alleged that defendant's actions caused damages to himself.

¶ 39    Members in a limited liability company owe each other and the company itself fiduciary duties of loyalty and care. 805 ILCS 180/15-3(a) (West 2014). The duty of loyalty entails: accounting for and holding in trust any property, profit, or benefit derived through the conduct of business, acting fairly when dealing with the company's business, and refraining from competing with the company. 805 ILCS 180/15-3(b) (West 2014). The duty of care requires members to "refrain from engaging in grossly negligent or reckless conduct, intentional misconduct, or a knowing violation of the law." 805 ILCS 180/15-3(c) (West 2014). Members must also discharge their duties consistent with the obligation of good faith and fair dealing. 805 ILCS 180/15-3(d) (West 2014). There is no dispute that as members of DACLA the parties owe each other duties of loyalty, care, and good faith and fair dealing.

¶ 40    Plaintiff further alleged in his complaint that defendant breached his fiduciary duties by converting DACLA funds for his own personal expenses, which constitutes a claim of self-dealing or misappropriation of assets. "The classic example of self-dealing involves the director or officer who disposes of corporate assets for his or her personal gain." *Hamilton v. Conley*, 356 Ill. App. 3d 1048, 1054 (2005). Accordingly, as alleged, defendant's actions would clearly constitute a breach of fiduciary duty, where he paid for personal expenses and loans with funds from DACLA. See *Levy*, 268 Ill. App. 3d at 369 ("It is well-settled that a fiduciary's use of corporate assets to further his own goals is a violation of his fiduciary duties."). Moreover, diversion of assets or profits is a "classic injury to the corporation." *Small v. Sussman*, 306 Ill. App. 3d 639, 644 (1999). Thus, this type of claim must be brought derivatively on behalf of DACLA. See *Hamilton*, 356 Ill. App. 3d at 1054; see also *Caparos*, 364 Ill. App. 3d at 168 ("Proper derivative actions include claims for a general partner's mismanagement, negligence, diversion of assets, action beyond authority, and failure to perform elements of an agreement.").

¶ 41    This court addressed a similar situation in *Caparos v. Morton*, 364 Ill. App. 3d 159 (2006), which we find instructive here. In that case, the plaintiffs, who were limited partners in a limited partnership, filed suit against the general partners, the defendants, for breach of fiduciary duty, conversion, and unjust enrichment. *Id.* The complaint alleged that the defendants wrongfully converted partnership assets and profits. *Id.* at 169. The defendants argued that the plaintiffs failed to properly bring a derivative action on behalf of the limited partnership because the partnership was not named as a party. *Id.* at 166. In response, the plaintiffs asserted that they properly brought their action as both a direct action and a derivative action, where the complaint specifically stated that the claims were brought by plaintiffs "both as individuals and derivatively[.]" *Id.* at 167. They also argued that "they did not need to name the limited partnership as a party because they adequately represented the interests of both the partnership and the absent limited partners." *Id.* at 166.

¶ 42    The court began its analysis by first stating that the plaintiffs' designation in their complaint did not control whether the claims were derivative or direct and then by finding that limited partnerships are subject to the same analysis as corporations in making this determination. *Id.* at 167. The court set forth the purpose of a derivative lawsuit, namely that such suits are "intended to protect the rights of the partnership, not the rights of the limited partners." *Id.* at 168. The court further stated: "Proper derivative actions include claims for a general partner's mismanagement, negligence, diversion of assets, action beyond authority, and failure to perform elements of an agreement." *Id.* Ultimately, the court found that plaintiffs' allegations that the general partners converted partnership assets and profits was derivative in nature. *Id.* at 169.

¶ 43    The court also rejected defendant's argument that the complaint did not state a derivative claim because the plaintiffs failed to join the partnership as a party. *Id.* at 171. Plaintiffs argued

that the limited partnership was not a necessary party because they "adequately represented the partnerships' interests." *Id.* at 174. In its analysis, the court quoted the following from *Ross v. Bernhard*, 396 U.S. 531, 538 (1970):

> "The claim pressed by the stockholder against directors or third parties 'is not his own but the corporation's.' [Citation.] The corporation is a necessary party to the action; without it the case cannot proceed. Although named as a defendant, [the corporation] is the real party in interest, the stockholder being at best the nominal plaintiff."

In support, the court cited to several Illinois cases which held similarly in corporate actions and to several federal cases holding that "a limited partnership is a necessary party to a derivative action brought by a limited partner." See *id.* at 173. The court continued that a limited partnership, just as a corporation, must be named as a party defendant in a derivative suit on its behalf. *Id.* at 172-73. However, the court also noted that "the failure to name the partnership as a party defendant did not prevent the court from fully resolving the case" where its interests were represented. *Id.* at 176.

¶ 44     Here, the complaint alleged, and the evidence showed, that defendant breached his fiduciary duty by converting company assets for his personal use. Clearly, DACLA was injured as a result of defendant's misconduct. The funds that defendant misappropriated for his personal expenses were taken directly from DACLA. These allegations fit squarely within the meaning of what constitutes a derivative lawsuit, as exemplified in *Caparos*. See *Lower v. Lanark Mut. Fire Ins. Co.*, 151 Ill. App. 3d 471, 473 (1986) ("When an officer, director or controlling shareholder breaches a duty to the corporation, a shareholder has no standing to bring a civil action at law against faithless directors and managers because the corporation and not the shareholder suffered the injury."). Additionally, we point out that defendant essentially conceded this point in his

closing argument where he stated that the funds defendant "expended for himself" belonged to DACLA, rather than plaintiff.

¶ 45    Moreover, although the complaint did not explicitly state the action was brought derivatively on behalf of DACLA, the complaint clearly alleged injuries specific to DACLA, DACLA was named as a party defendant, and its interests were adequately represented in the suit. See *Caparos*, 364 Ill. App. 3d at 176. Accordingly, the trial court properly awarded compensatory damages to DACLA.

¶ 46    As we have determined that plaintiff's claim was derivative, it would have been in error for the trial court to award damages to plaintiff. "[D]erivative claims always and only belong to the corporation on whose behalf they are brought, and any damages awarded in a derivative suit flow exclusively and directly to the corporation, *not* the nominal plaintiffs." (Emphasis in original.) *Stevens v. McGuireWoods LLP*, 2015 IL 118652, ¶ 15 (citing *Brown*, 125 Ill. 2d at 355-57). The result is that the nominal plaintiff benefits only indirectly from a successful derivative suit, for example through their shares' value increase. *Id.* Here, the benefit plaintiff receives is that DACLA, in which he is a 50% member, returns to the financial standpoint it was in prior to defendant converting funds. As a practical matter, even if the trial court had awarded compensatory damages to plaintiff, plaintiff would have been required to remit the proceeds to DACLA by virtue of the Act and common law. 805 ILCS 180/40-15 (West 2014); *Meyer v. Fleming*, 327 U.S. 161, 167 (1946) (stating that the corporation "is only nominally a defendant, since any judgment against the real defendant runs in its favor").

¶ 47    In reaching this conclusion, we agree with the court's statement from *Caparos*: "For this court to negate the substantial work of the trial court based on the absence of the limited partnership as a party would elevate form over substance." 364 Ill. App. 3d at 175. Accordingly, the trial court

correctly awarded compensatory damages to DACLA, where it was the entity harmed by defendant's breach of fiduciary duty and was adequately represented in this action. Plaintiff's failure to explicitly institute the action as derivative stands as no barrier to this court's affirmance of the trial court's ultimately correct result. For all of the reasons stated, we find no error in the court's award of compensatory damages to DACLA as related to plaintiff's derivative claim of breach of fiduciary duty.

¶ 48                                    b. Direct Claim

¶ 49    As set forth above, the derivative action is the standard vehicle for shareholders to seek relief for wrongs done to the corporation. *Davis v. Dyson*, 387 Ill. App. 3d 676, 689 (2008). However, a suit may also be brought individually as a direct action where there has been a separate and distinct injury to plaintiff himself, and not the limited liability company. See *Spillyards*, 278 Ill. App. 3d at 670-71. Pursuant to the Act, "a member may maintain an action against a limited liability company, a manager, or another member for legal or equitable relief *** to enforce" the member's rights under the operating agreement or under the Act and any "rights and interests arising independently of the member's relationship to the company." 805 ILCS 180/15-20 (West 2014). "Direct and derivative claims can arise from the same nucleus of facts, *** provided that sufficient facts are alleged in support of each theory." *Caparos*, 364 Ill. App. 3d at 169. In Illinois, there is no impediment to bringing both types of claims at the same time. See *Levy*, 268 Ill. App. 3d at 371; see also *Caulfield*, 2016 IL App (1st) 151558, ¶ 51. A determination of the nature of plaintiff's alleged individual, or direct, claims requires our return to a review of plaintiff's complaint.

¶ 50    Plaintiff alleged as common to both counts in his complaint that due to their twenty-year business and personal relationship, during which defendant handled all of plaintiff's business and

financial affairs, defendant stood in a special fiduciary relationship with plaintiff. He further alleged that defendant used and converted DACLA cash and assets to his own personal use and benefit without authorization or permission from plaintiff. Count I of the complaint sought an accounting of "any and all monies received, spent or distributed since March 1, 1987 through the present date[.]" Count II alleged breach of fiduciary duty and alleged that "DACLA owned or controlled assets valued in excess of $1,000,000,000 and that defendant converted [those assets] to his own benefit and used no less than $500,000 to the detriment of the plaintiff."

¶ 51    Based on our review of the complaint, we conclude that plaintiff has not alleged an injury separate and distinct from that suffered by any other DACLA shareholder, who in this case, happens to be the defendant. Moreover, and notwithstanding the alleged violation of personal trust, the only tangible harm plaintiff suffered as a result of defendant's actions was the loss of funds from DACLA in which plaintiff is a member. Thus, there is no specific or distinct injury to plaintiff that stems from his personal relationship with defendant, at least not one that can be resolved in the courts, and any award of compensatory damages directly to plaintiff would constitute a windfall. Based on our review of the complaint, we find that plaintiff has not alleged a direct claim, only a derivative claim. Accordingly, we find that the court correctly awarded compensatory damages to DACLA.

¶ 52                              2. Punitive Damages

¶ 53    Next, we address the trial court's award of $40,000 in punitive damages to plaintiff. Defendant does not dispute that the facts support an award of punitive damages due to his intentional conduct. Neither does he dispute the amount of the damages award nor its computation. Instead, defendant contends that the award of punitive damages to plaintiff was in error because plaintiff was not also awarded compensatory damages. We disagree.

¶ 54    "Punitive damages are intended to punish and deter." *Black v. Iovino*, 219 Ill. App. 3d 378, 393 (1991). Our supreme court has stated that: "While deceit alone cannot support a punitive damage award, such damages may be allowed 'where the wrong involves some violation of duty springing from a relation of trust or confidence, or where the fraud is gross, or the case presents other extraordinary or exceptional circumstances clearly showing malice and willfulness.' " *Home Savings & Loan Association v. Schneider*, 108 Ill. 2d 277, 284 (1985) (quoting *Laughlin v. Hopkinson*, 292 Ill. 80, 89 (1920)). In determining whether punitive damages were properly awarded in a bench trial, a reviewing court considers: "(1) whether punitive damages are available for the particular cause of action, using a *de novo* standard; (2) whether, under a manifest weight of the evidence standard, the defendant or defendants acted fraudulently, maliciously[,] or in a manner that warrants such damages; and (3) whether the trial court abused its discretion in imposing punitive damages." *Capraros*, 364 Ill. App. 3d at 178.

¶ 55    It is well-settled that punitive damages may be imposed in a breach of fiduciary duty claim (*Levy*, 268 Ill. App. 3d at 379), though the breach must be "accompanied by aggravating circumstances such as willfulness, wantonness, malice or oppression" (*Glass v. Burkett*, 64 Ill. App. 3d 676, 683 (1978)). It cannot be seriously argued that defendant's conduct in the misappropriation of DACLA funds for his personal use did not constitute a breach of that duty. Further, "[i]t lies within the equitable discretion of the trial court to determine the appropriate remedy for breach of a fiduciary duty." *Tully*, 409 Ill. App. 3d 659, 681 (2011). We cannot conclude that the court abused its discretion in awarding such damages.

¶ 56    The point of contention here is whether, because the compensatory damages were awarded directly to DACLA as opposed to plaintiff, punitive damages could then be awarded to plaintiff. It is settled law that punitive damages may not be awarded in the absence of an award of

compensatory damages. *Kemner v. Monsanto Co.*, 217 Ill. App. 3d 188, 199 (1991); *Mitchell v. Elrod,* 275 Ill. App. 3d 357, 362 (1995). Defendant has provided no case law to suggest that the court's award of punitive damages directly to plaintiff, like the facts in this case, was error and our research has revealed none. As we stated above, the Act provides that any proceeds a plaintiff receives from a successful derivative action must be remitted to the limited liability company. 805 ILCS 180/40-15 (West 2014). Essentially, section 40-15 sets up two options: either award damages directly to the company or award the nominal plaintiff the damages with instructions to remit the proceeds to the company. As a practical matter, these alternatives are functionally equivalent and the court in this instance chose to award the damages directly to DACLA.

¶ 57    Here, although the compensatory damages were awarded directly to DACLA, both plaintiff and defendant, as the two shareholders, are the indirect beneficiaries. The compensatory damages award, albeit indirectly, ultimately benefits both plaintiff and defendant in the same manner. Thus, it is not entirely accurate to state that plaintiff was not awarded compensatory damages. Although the court's award of compensatory damages makes DACLA whole, it does nothing to penalize defendant for his self-dealing and wanton disregard of his fiduciary duties, a decision we deem warranted on the facts in this case. Further, to have awarded the punitive damages to DACLA would permit defendant to benefit from his own wrongdoing. Thus, we conclude that the court did not err in awarding punitive damages to plaintiff.

¶ 58                         3. Defendant's Counterclaims

¶ 59    Finally, defendant argues that the trial court should have granted his counterclaims which he characterizes on appeal as actions seeking to (1) receive compensation in *quantum meruit* for managing the Milwaukee Avenue property and (2) recoup plaintiff's portion of the $72,000 that he personally expended to retire their joint debt. However, the record shows that defendant's

amended counterclaim did not raise a counterclaim for a portion of the $72,000 personal loan. As such, defendant cannot now complain about the trial court's failure to award him damages for a claim that he never pled. See *Perona v. Volkswagen of America, Inc.*, 2014 IL App (1st) 130748, ¶ 40 (finding that the plaintiff's pleadings controlled the issues in controversy). In any event, this issue is rendered moot because the court based the set-off on the amount defendant personally expended to extinguish the First Equity Bank loan. Thus, we limit our review to defendant's *quantum meruit* claim.

¶ 60     *Quantum meruit*, which means "as much as he deserves," is an equitable remedy whereby a party can receive compensation for the reasonable value of services rendered based on a contract implied in law. *Archon Construction Company, Inc. v. U.S. Shelter, LLC*, 2017 IL App (1st) 153409, ¶ 30. To recover under a theory of *quantum meruit*, "a plaintiff must prove that (1) it performed a service to benefit the defendant, (2) it did not perform the service gratuitously, (3) defendant accepted the service, and (4) no contract existed to prescribe payment for the service." *Id.*

¶ 61     Defendant maintains that he is entitled to a fee of 6% of gross rents for managing the Milwaukee Avenue property, a rate which he contends is standard in the commercial real estate industry. According to defendant, 6% of the gross rents from 1987 to 2015 totaled $122,768. However, defendant admits that he has already withdrawn $85,912 as a "management fee" from DACLA and, thus, contends that he is owed $36,856 in *quantum meruit*.

¶ 62     The trial court found that defendant failed to prove his *quantum meruit* claim, though the court did not state its reasoning for this conclusion. Nonetheless, we agree with the court's disposition. See *Gunthrop v. Golan*, 184 Ill. 2d 432, 438 (1998) ("A trial court may be affirmed on any basis that appears in the record without regard to whether the trial court relied upon such

ground or whether the trial court's rationale was correct."). Pursuant to section 15-7 of the Act, "[a] member is not entitled to remuneration for services performed for a limited liability company, except for reasonable compensation for services rendered in winding up the business of the company." 805 ILCS 180/15-7(d) (West 2014).

¶ 63    Here, defendant does not claim that his services were provided in the process of concluding the business of DACLA. As such, defendant is not entitled to the reasonable value of the management services he provided over the years to DACLA. Although many of the statutory limitations set forth in the Act can be overridden through an operating agreement (805 ILCS 180/15-5 (West 2014)), as we earlier noted, there is no evidence of an operating agreement for DACLA. Thus, the court correctly concluded that defendant's claim of *quantum meruit* fails.

¶ 64                               D. Plaintiff's Cross-Appeal

¶ 65                               1. Compensatory Damages

¶ 66    On cross-appeal, plaintiff first argues that the trial court erred by declining to award him compensatory damages for defendant's breaches of his fiduciary duties in obtaining the First Equity Bank loan in the first place. Plaintiff contends that the trial court should have found that defendant also breached his fiduciary duties by obtaining the First Equity Bank loan secured with DACLA assets and paying the loan with DACLA funds. As such, plaintiff argues that the award of compensatory damages against defendant should be greater.

¶ 67    As we review the record in this case, and plaintiff's arguments on appeal, they appear to suggest a measure of unfair dealing or lack of transparency in dealings between him and defendant. However, plaintiff failed to allege this breach of fiduciary duty with any particularity in his complaint, and therefore, the issues were not before the trial court. Thus, we decline to entertain those arguments here. "A plaintiff fixes the issues in controversy and the theories upon which

recovery is sought by the allegations in his complaint." *Pagano v. Occidental Chemical Corp*., 257 Ill. App. 3d 905, 911 (1994). At no point in plaintiff's two-count complaint did he allege that defendant breached his fiduciary duty by securing the First Equity Bank loan, on which plaintiff is a co-signor, or by paying said loan with DACLA funds, conduct in which plaintiff acquiesced. His complaint requests an accounting of DACLA's business and alleges that defendant breached his fiduciary duty by converting DACLA funds for his own personal benefit. Having failed to allege these specific breaches in his complaint, the issues were not before the trial court and, thus, are not properly before us here. See *800 South Wells Commercial LLC v. Cadden*, 2018 IL App (1st) 162882, ¶ 44 (holding that plaintiff could not argue on appeal regarding a specific breach of fiduciary duty where it was not properly raised as an allegation in the complaint). The trial court held that defendant was liable for compensatory damages in the amount of $134,737.66 for the personal expenses he paid with DACLA funds. See *Poliquin v. Sapp*, 72 Ill.App.3d 477, 480 (1979) (finding that because a breach of fiduciary duty by directors alleged injury to the corporation, shareholders did not have a right to recover damages in their own names). We find no error in the court's final ruling on plaintiff's breach of fiduciary duty claim as alleged in complaint.

¶ 68                                    2. Set-Off

¶ 69    Finally, plaintiff argues that the trial court erred when it allowed the compensatory damages award to be set-off by the $72,000 defendant paid on the parties' joint debt to First Equity Bank. Plaintiff contends that the set-off is inappropriate because the debt defendant paid off only arose due to defendant's breach of fiduciary duty in his dealings with the business loan. Essentially, this claim is an extension of the plaintiff's claims of unfair dealing, which we addressed above. As we have already concluded, we find no error in the trial court's award of compensatory damages

based on the particular allegations in the complaint. We find similarly with respect to the court's decision to grant the set-off.

¶ 70    Our supreme court has established two distinct meanings for the term "set-off." *Thornton v. Garcini*, 237 Ill. 2d 100, 113 (2010). First, a set-off may refer to a situation when a defendant has a distinct cause of action against the same plaintiff who filed suit against him, which must be raised in the pleadings. *Id.* Second, a set-off may refer to a defendant's request for a reduction of the damages award because a third party has already compensated the plaintiff for the same loss. *Id.* The determination of whether a defendant is entitled to a set-off is a question of law, and therefore, subject to *de novo* review. *Id.* We deal here with the first type of set-off, which defendant raised in his counterclaim.

¶ 71    Here, the court concluded that defendant breached his fiduciary duty by wrongfully converting DACLA funds. The court found that this breach resulted in damages of $134,737.66. However, the court also found that plaintiff's failure to sign the loan extension for the parties' joint debt resulted in the need for defendant to expend $72,000 to avoid default and imminent foreclosure on the property. Thus, because defendant expended his own personal funds for the benefit of DACLA, the court determined that $72,000 should be deducted from the compensatory damages that defendant owed as a set-off. The court concluded that after the set-off defendant owed a total of $62,737.66 to DACLA. This was merely a mathematical calculation of compensatory damages by the trier of fact.

¶ 72    The record wholly supports these findings and the ultimate calculation of damages. Moreover, as a joint owner of DACLA and joint debtor for the First Equity Bank loan, plaintiff received the benefit of the $72,000 personal loan. To not allow a set-off under these circumstances would result in a windfall for plaintiff. See *Harriss v. Elliott*, 207 Ill. App. 3d 384, 389-90 (1991)

("The purpose of compensatory tort damages is to compensate the plaintiff for his injuries, not to punish defendants or bestow a windfall upon plaintiffs").

¶ 73    In summary, we affirm the trial court's award of compensatory and punitive damages, along with the trial court's denial of defendant's counterclaim for *quantum meruit*. We also affirm the trial court's decision to not award further compensatory damages to plaintiff based on the parties' joint execution of the loan agreement and payment of the business loan. Finally, we hold that the set-off in the amount of $72,000 is appropriate.

¶ 74                                III. CONCLUSION

¶ 75    For the reasons stated, we affirm the judgment of the circuit court.

¶ 76    Affirmed.