2022 IL App (1st) 220209-U

SECOND DIVISION
November 22, 2022

No. 1-22-0209

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT
_____

| | | |
|---|---|---|
| ALI ALI MUSA, MONIR AHMED and SALAAM PROPERTIES, LLC, a limited liability company, | ) ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiffs/Counter-Defendants-Appellees, | ) ) | |
| v. | ) ) | No. 17 CH 12357 |
| HAIL SAEED, individually and on behalf of SALAAM PROPERTIES, LLC, a limited liability company, | ) ) ) ) ) | Honorable Michael T. Mullen, |
| Defendants/Counter-Plaintiffs-Appellants. | ) | Judge Presiding. |

_____

JUSTICE HOWSE delivered the judgment of the court.
Presiding Justice Fitzgerald Smith and Justice Ellis concurred in the judgment.

ORDER

¶ 1    *Held*:   We affirm the judgment of the circuit court of Cook County awarding damages for the parties' respective breaches of fiduciary duties based on the parties' individual contributions to the limited liability corporation (LLC), damages in favor of plaintiffs and counter-plaintiffs individually, and declining to award damages on plaintiff's derivative claim, punitive damages, or attorney fees.

¶ 2    This suit involves the parties' creation of an LLC and the subsequent breakdown of their ability to cooperate in its operation. Following a bench trial, the trial court found each party violated their fiduciary duties owed to both the LLC and each other as members-managers of the LLC. The court declined to grant relief on the derivative claim on behalf of the LLC but did

award damages on claims by the members of the LLC individually. The court declined the requests for punitive damages and attorney fees in light of the respective multiple breaches of fiduciary duties by all of the parties. For the following reasons, we affirm.

¶ 3                                  BACKGROUND

¶ 4     On September 12, 2017, plaintiffs, Ali Ali Musa, Monir Ahmed, and Salaam Properties, LLC, filed a complaint for injunctive relief, breach of fiduciary duty, and an accounting against defendants, Hail Saeed and Sufwan Laundries, Inc. (hereinafter the "initial complaint"). The initial complaint alleged, in pertinent part, as follows: Musa, Ahmed, and Saeed were members of Salaam Properties, LLC, an Illinois limited liability company formed in May 2010. Salaam is a member-managed LLC with an Operating Agreement. Musa, Ahmed, and Saeed as members have equal voting rights, and unanimous consent is required for business decisions. In June 2010, Salaam purchased property in Chicago "to operate *** in a manner profitable to all members" using contributions of money from each member. The property is a "strip mall" divided into two units. The initial complaint alleges Salaam operated a laundromat in "Unit 1" of the property and leased "Unit 2" to third parties. The complaint also alleges the members formed Sufwan to be a corporate entity and licensee operating on the premises with each member being an equal shareholder in Sufwan. The members agreed to "take turns at agreed-upon times to operate the laundromat" and that each member who was not onsite would receive a minimum payment from the profits from the laundromat. That arrangement lasted until October 2012, when Saeed "began and has continued to act alone" in operating the laundromat onsite.

¶ 5     The initial complaint alleges that during the time Saeed has acted alone to operate the laundromat onsite, he has, *inter alia*, "refused to consult with [Musa and Ahmed] or share information *** necessary for [them] to participate in the business," has "unilaterally made

business decisions including leasing or attempting to lease the property," and "indicated an unwillingness and continued refusal to step away from the onsite operation of the premises" and failed and refused to honor their agreement and the law. Count I of the initial complaint for injunctive relief alleges Saeed had "continued to seek to and/or execute leases to third parties without the authority and consent of" Musa and Ahmed and that injunctive relief was needed to prevent further damage to Musa and Ahmed. The initial complaint states: "Because of the impasse in management among [Musa, Ahmed, and Saeed,] and in order to avoid further jeopardy to the rights and investments of all parties, *** [Musa and Ahmed] request that the subject premises should either be managed and operated under court supervision until rights are settled, or the property should be sold under court supervision."

¶ 6    Count II of the initial complaint is for breach of fiduciary duty. Count II alleges Saeed breached his fiduciary duties under Illinois law and the Illinois Limited Liability Act (LLC Act) to Musa and Ahmed by, *inter alia*, "refusing [Musa and Ahmed] their rights to unanimous participation and consent on business decisions and making decisions unilaterally and *** for his own profit to the detriment of [Musa and Ahmed]" and "seeking to exclude them from ownership and participation in Sufwan." Count II sought damages and punitive damages from Saeed. Count II of the initial complaint is for an accounting, and Count IV is titled as a Shareholders' Derivative Action. The derivative action in the initial complaint alleges Saeed was an officer and/or director of Sufwan and while acting in those capacities Saeed committed certain acts that "have been detrimental to the financial and other health of the corporation" including, but not limited to, conducting Sufwan business in a manner disallowed by law, failing in his duties to Musa and Ahmed, and otherwise acting in a manner detrimental to the corporation.

¶ 7    On June 17, 2019, Musa, Ahmed, and Salaam filed a motion to dissolve Salaam and liquidate its assets. The motion to dissolve argues that the fact Musa and Ahmed do not want Saeed to operate the property due to the several allegations against Saeed illustrates "the fact that the parties clearly cannot agree in any manner to continue operating the business." The motion to dissolve notes that under the LLC Act, the court may dissolve the business where "it is not otherwise reasonably practicable to carry on the company's business in conformity with the articles of organization and the operating agreement." The motion asserts that it was clear that "the members cannot reasonably carry on the business when the members are in deadlock."

¶ 8    On November 7, 2019, Saeed, individually and on behalf of Salaam, filed a one-count counterclaim for breach of fiduciary duties (count I) ("counterclaim"). The counter claim alleges Musa, Ahmed, and Saeed are the sole members of Salaam, that Salaam is member-managed, and each member owns an equal one-third share of the LLC and are parties to the LLC's operating agreement. The Operating Agreement "requires the unanimous consent of the members on all operating decisions, including leasing" the property that is the subject of this case. The counterclaim alleges Musa and Ahmed breached their fiduciary duties to Saeed and Salaam by, including but not limited to, refusing to lease the subject property and failing to pay their share of the LLC's financial obligations.

¶ 9    Specifically the counterclaim alleges that in February 2014 Saeed leased a portion of the subject property, Unit 2, to MK Fast Food and Martha A. Barerra. Musa and Ahmed allegedly encouraged the lessee "to breach its lease to drive down the value of the LLC as part of an effort to acquire Saeed's membership interest in the LLC for a reduced price." The counterclaim alleges that in response to Saeed signing a second lease with Sufwan, which operated the laundromat on the largest portion of the subject property and in which Saeed owned an interest,

Musa and Ahmed sued to evict Sufwan "to drive down the value of the LLC as part of an effort to acquire Saeed's membership interest in the LLC for a reduced price." The counterclaim also alleges that in October 2016 Saeed leased Unit 2 of the subject property to Lancaster Drive, Inc. and Muath Ibrahim Abu Ghose ("Lancaster"), after one year Musa advised Lancaster the lease was invalid and advised Lancaster to stop paying rent, which it did, and in the face of Saeed's filing a suit against Lancaster for unpaid rent, Musa and Ahmed executed a document terminating Lancaster's lease "for essentially no consideration." Saeed similarly alleged Musa and Ahmed did this to drive down the value of the LLC and obtain Saeed's interest. Finally, the counterclaim alleges that by November 2017, Musa and Ahmed had caused all of the lessees of the subject property to vacate the property, sealed the property leaving it inaccessible to Saeed, and for over five years refused to pay the LLC's financial obligations, which required Saeed "to cover with his personal funds the LLC's debt service and other ordinary operating expenses." Saeed alleged Musa and Ahmed's conduct breached their fiduciary duties and that Saeed had been damaged as a result. The counterclaim sought damages and punitive damages.

¶ 10     The case proceeded to a bench trial on Musa and Ahmed's initial complaint and motion to dissolve and liquidate Salaam and Saeed's counterclaim. On September 1, 2021, the trial court issued an extensive written opinion and order.

¶ 11     As it pertains to this appeal, the trial court made the following findings of fact: Although Musa, Ahmed, and Saeed agreed to be equal partners with equal financial obligations when Salaam purchased the subject property, Musa made a financial contribution to the purchase that was greater than Ahmed's, and Saeed's contribution was greater than Ahmed's. On June 3, 2020, Musa caused Salaam to execute a promissory note to him to repay Musa in equal installments

over the course of one year. The promissory note was for $75,000 but Musa's excess financial contribution had been only $50,000.

¶ 12    In July 2020 Musa asked Salaam to take out a loan so that he could be repaid immediately. In October 2010, Salaam applied for and received a loan. The loan was secured by a mortgage on the subject property. In connection with the loan Musa, Ahmed, and Saeed executed a written agreement setting forth terms for repaying Musa, the status of the loan, and the consequences for the members if the loan was not repaid (none of which are directly germane to the issues in this appeal). Later in 2010 Ahmed wrote checks disbursing all of the loan proceeds for Musa and Ahmed's sole benefit. The trial court found that "there was no disbursement directly to Saeed and the loan proceeds were never used to pay any of Saeed's creditors." The trial court further found that Musa and Ahmed orchestrated the loan for their own personal benefit and to Saeed's detriment.

¶ 13    The trial court found that Saeed and Ahmed were shareholders in Sufwan, which operated the laundromat and was the only tenant to ever occupy Unit 1 of the subject property. The court's next finding of fact is highly meaningful to our disposition, so we set it out in full:

> "[I]n September 2011 Saeed returned from a two-month trip to Yemen.
> *** Saeed complained about the poor condition of both Sufwan's equipment, as
> well as the overall condition of Unit 1 ***. At that time, Musa and Ahmed told
> Saeed that Sufwan was far too labor intensive and that it was clearly unprofitable.
> Musa and Ahmed *** made it clear to Saeed that they no longer wanted to be
> involved with Sufwan. Musa and Ahmed then went further and informed Saeed
> that in their opinion, that as the entire Salaam venture was and would be
> unprofitable, that the Property should be sold.

Musa and Ahmed also stated that if Saeed did not agree to sell the Property that Saeed would alone be responsible for the management of both Sufwan, as well as Salaam. As Saeed made clear that he did not want to sell the Property, he agreed to solely manage the Property ***. *** [T]he oral agreement did change, at least initially, the requirement for the unanimous consent of each of the three members on all operating decisions, including the leasing of the Property. Separately, Ahmed orally agreed with Saeed to forfeit any ownership rights that he had in Sufwan to Saeed."

¶ 14 Also in September 2011 Musa wanted Sufwan to enter a five-year lease for Unit 1 at a rate of $1,500 per month. The trial court specifically found this amount was not below market rates and that the amount of rent was fair and reasonable. Musa's bookkeeper drew up the September 2011 Sufwan lease and Musa and Ahmed signed it. Saeed later signed an amendment to Sufwan's lease that shifted responsibility for Sufwan's water bills and other expenses to Salaam. The court found Saeed executed this amendment unilaterally and that Saeed had no right to do so.

¶ 15 The trial court found that beginning in February 2011 Saeed leased Unit 2 on the subject property to three different restaurants. The court found that all three tenants were "procured through Saeed's individual efforts as neither Musa nor Ahmed made any effort to lease the Property." The first tenancy ran from February 2011 until November 2011. Musa and Ahmed had knowledge of and consented to this lease. The second tenancy lasted from February 17, 2014 until June 2016. The trial court found that neither Musa nor Ahmad had knowledge of the lease and did not consent to it, they had "authorized Saeed to act on their behalf and on behalf of Salaam and by doing so fully consented to Saeed to enter the lease." The court found Musa and

Ahmed "forfeited any right to manage the Property by their verbal agreement with Saeed that he would manage the Property." During the tenancy, Musa had informed the tenant that their lease was invalid, which caused the tenant to make partial rent payments before eventually moving to a different location. The third tenancy was from October 2016 until October 2017. Again, neither Musa nor Ahmed had knowledge of, consented to, or would have consented to this lease.

¶ 16    In October 2016, Musa informed the tenant its lease was invalid and instructed it to stop paying rent, which it did a year later but the tenant did not vacate Unit 2 until April 2018. Saeed, on behalf of Salaam, unilaterally and without Musa and Ahmed's knowledge sued the third tenant, Lancaster, but on April 4, 2018, Musa and Ahmed executed a release of the tenant relative to its financial obligations and obligations under the lease. As a result of the release Saeed's suit was dismissed. The trial court found that by intentionally causing the second and third tenants to break their leases and not seeking a replacement, Salaam was harmed. The trial court found the motive for the conduct was Musa and Ahmed's desire to sell the property and their strategy was to " 'do away with any tenants' " and increase Saeed's operating deficit so that he would accede.

¶ 17    Sufwan paid rent to Salaam but Saeed did not deposit that rent into a Salaam account. Instead, Saeed took the rent payments and used them to "pay Salaam's bills that he [(Saeed)] unilaterally decided should be paid by Salaam." The trial court found that in doing so Saeed failed to recognize or simply ignored his duty to Salaam to collect rent and deposit it in Salaam's account.

¶ 18    The trial court found that the parties' oral agreement that Saeed would solely manage Salaam was temporary and that by early 2016, Musa and Ahmed made clear efforts to revoke the oral agreement. The court found that Saeed refused to acknowledge Musa and Ahmed's right to

object to Saeed's management of Salaam or his continued role in its management and that Musa and Ahmed both wanted to sell the subject property while Saeed did not.

¶ 19    On September 27, 2016, Musa and Ahmed's attorney informed Saeed that Salaam would not renew Sufwan's lease. Nonetheless, on October 1, 2016, Saeed renewed Sufwan's lease for a period of 15 years for the same rent as existed before. Saeed signed the lease on behalf of Salaam but he had no authority to do so. Neither Musa nor Ahmed was aware of the October 2016 lease and neither would have approved of it. Saeed also caused Salaam to pay Sufwan's water bill. The trial court found that by doing so Saeed "was confusing his obligations to Sufwan with those duties that he owed to Salaam." The court ruled that Saeed could not receive a contribution from Musa and Ahmed for Saeed's use of his personal funds on behalf of Salaam to pay Sufwan's water bills; rather, those bills were "Saeed's personal obligation to be paid to Salaam."

¶ 20    Musa and Ahmed also did not have authority to make any decisions regarding Unit 1 of the subject property without Saeed's consent, but they caused Salaam to file an eviction complaint against Sufwan. Subsequently, in June 2017, Salaam obtained an eviction judgment against Sufwan and Sufwan stopped paying rent. As a consequence, Salaam assumed responsibility for the utilities for Unit 1 of the subject property. The trial court found Musa and Ahmed's conduct was detrimental to Salaam because Sufwan had been paying rent and no replacement tenant was available or being sought. Unit 1 has remained vacant since 2017.

¶ 21    Although Salaam could have received $62,000 in rent from late 2010 until September 2012, which it did not, the trial court found Salaam could not have realized a profit from that rent given its fair and reasonable expenses.

¶ 22    While the subject property was intentionally left vacant the property suffered vandalism, theft, and damages from a general lack of maintenance. In November 2017 Musa and Ahmed

welded the property shut with metal sheeting. The trial court found that Musa and Ahmed's failure to secure and repair the property resulted in injury to Salaam but sealing the property with metal sheeting was in the best interest of Salaam to keep the property safe from further vandalism and theft.

¶ 23    In October 2018 Saeed hired his son to perform security and maintenance of the subject property without Musa and Ahmed's knowledge or consent. The trial court found Saeed did not have authority to hire anyone without Musa and Ahmed's consent after 2016. The trial court found it was reasonable and necessary to hire someone to perform security and maintenance and Saeed's son's fees were fair and reasonable, therefore Musa and Ahmed failed to establish any damage relative to the hiring.

¶ 24    The trial court found that Salaam has not received any rental income since the third tenant left in 2018 but Saeed paid all expenses through 2021. Saeed used his personal funds to pay Salaam's operating deficit either by loaning or advancing the money to Salaam. Saeed requested Musa and Ahmed pay their share of expenses but, the trial court found, "Saeed's requests for additional funds *** were received and ignored by both Musa and [Ahmed.]" The trial court determined the amount of Salaam's losses from 2012 through 2021. During that period Salaam lost money each year. The court found that Saeed loaned or advanced Salaam "100% of the funds it needed to cover its operating deficits during 2012-21."

¶ 25    The trial court also made the following pertinent conclusions of law: First, with regard to the request to dissolve Salaam, the trial court found that "after many years of acrimonious and costly litigation, Musa, Saeed and Ahmed clearly have been and will be unable to continue the business operations of Salaam." The court noted that Salaam's operating agreement requires a unanimous vote for all significant decisions and concluded that, because "Musa, Ahmed and

Saeed ultimately recognized that Salaam could not continue to operate due to their acrimony and inability to agree as to how to continue the operate Salaam, the parties have agreed to dissolve Salaam." Regardless of the parties' agreement, the court found that it was clear that "the economic purpose of Salaam has been unreasonably frustrated and that it is not reasonably practicable to carry on Salaam's business in conformity with Salaam's articles of organization and its operating agreement." The court noted that the question remained as to how to wind up Salaam with Musa and Ahmed seeking a sale of the subject property (and dissolution of Salaam) and Saeed seeking disassociation of Musa and Ahmed from Salaam with an order granting him the right to buy out their interests. The court found that the proper remedy required a close examination of the parties' overall conduct.

¶ 26    To that end the trial court found, in pertinent part, that each member of Salaam, Musa, Ahmed, and Saeed, breached their fiduciary duties on several occasions. Specifically, the trial court found that Musa and Ahmed breached their fiduciary duty to Salaam by obtaining the loan (ostensibly to repay Musa) for their personal benefit and not for the benefit of Salaam, by failing to pay their fair share of Salaam's financial obligations, and their various acts surrounding the leasing of the subject property; Musa and Ahmed breached their fiduciary duty to Saeed by disbursing the loan proceeds for their own benefit only and by failing to advance their share of Salaam's expenses to Saeed causing him to personally fund payment.

¶ 27    The trial court found that Saeed breached his fiduciary duties to Salaam, Musa, and Ahmed by, in October 2016 entering into the second Sufwan lease without Musa and Ahmed's knowledge or consent, hiring his son without Musa and Ahmed's knowledge or consent, obligating Salaam to pay Sufwan's business expenses, and failing to deposit rent paid to Salaam directly into Salaam's accounts.

¶ 28    Next, the trial court noted that the appropriate remedy for a breach of fiduciary duty "is left to the *equitable* discretion of the Court." (Emphasis added.) The court found that Musa and Ahmed sought damages for, *inter alia*, the rent the tenants paid Saeed but which Saeed did not deposit directly into a Salaam account. The trial court found that although Saeed breached his fiduciary duty in that regard, "it was clear from the testimony and evidence, that all of the rental money that had been collected by Saeed was used to pay Salaam's expenses and not for [Saeed's] own personal expenses, and therefore the court rejected the argument Salaam suffered damage from this breach. The court further found Salaam did not incur damage from Musa and Ahmed's termination of the second Sufwan lease or the third Unit 2 tenant's lease "as they were not unanimously agreed to by all Salaam's members. The court found that Musa and Ahmed breached their duties by causing the termination of the second Unit 2 tenant's lease, of which they did have knowledge and to which they did consent, and that this breach caused damage to Salaam; however, the court found that Saeed's failure to deposit those rents, when balanced against Musa and Ahmed's breach, "extinguish each other's respective damages." The court stated that it would "not make any award based on these mutual breaches."

¶ 29    The trial court awarded Musa and Ahmed damages for their respective individual contributions to Salaam, damages individually in favor of Saeed and against Musa and Ahmed for payments on the loan that was for Musa and Ahmed's personal benefit, and damages in favor of Musa and Ahmed for the water bills Salaam paid for Sufwan. The trial court also awarded Saeed his initial contribution to Salaam. The court denied Saeed's request for a derivative award in favor of Salaam.

¶ 30    Musa, Ahmed, and Saeed requested punitive damages and an award of attorney fees. The trial court concluded that after "a careful review of the identified conduct in light of the remedies

- 12 -

that are being otherwise ordered and the unlikelihood that the parties will commit similar acts of wrongdoing in the future, the Court denies the parties' request for punitive damages." The court similarly found that "[i]n light of the multiple breaches of the Operating Agreement by all the parties almost from the date of execution, the Court denies all requests for attorney's [*sic*] fees and expenses and each party will bear his own costs." The trial court's judgment dissolved Salaam and ordered the liquidation of its assets, and awarded the parties' respective damages.

¶ 31    On September 30, 2021, Saeed filed a posttrial motion arguing, in pertinent part, that (1) the record contains unrefuted evidence that Saeed did deposit rent paid by the second and third tenants into Salaam's bank account and, therefore, the trial court had no basis to refuse to award Salaam damages for Musa and Ahmed's interference with those leases; (2) the trial court's finding that in 2016 Musa and Ahmed revoked the parties' oral agreement that Saeed would solely manage the property is not supported by the record and is immaterial because regardless whether they revoked the oral agreement or not Musa and Ahmed's conduct harmed Salaam with regard to the third tenant and in keeping Unit 2 vacant; (3) the trial court should enter an order disassociating Musa and Ahmed from Salaam and permit Saeed to buy out their interests but no evidence supports the trial court's exercise of its discretion to order the sale of the property and dissolving Salaam.

¶ 32    In January 2022, the trial court entered an order granting Saeed's posttrial motion in part and denying it in part. As is pertains to this appeal, the trial court denied Saeed all of the relief requested above.

¶ 33    On February 15, 2022, Saeed filed a notice of appeal from the September 1, 2021 order and the January 19, 2022 order denying Saeed's posttrial motion in part. The notice of appeal specified that on appeal, "Saeed seeks entry of an Order that vacated the Orders to the extent

they denied Saeed's request for derivative relief *** in connection with [Musa and Ahmed's] preventing the leasing of the subject premises (based on the trial court [*sic*] incorrect finding that Saeed had breached his fiduciary duties) ***" and, "in the event such relief is granted," an order vacating the trial court's judgment dissolving Salaam (as opposed to ordering [Musa and Ahmed] to be disassociated) any denying Saeed's requests for awards of attorney's [*sic*] fees and punitive damages" or remands for the trial court to reconsider those rulings.

¶ 34    This appeal follows.

¶ 35                                ANALYSIS

¶ 36    "A shareholder derivative action is a vehicle by which an individual shareholder brings suit to enforce a corporate cause of action against officers, directors, and third parties." *Biefeldt v. Wilson*, 2022 IL App (1st) 210336, ¶ 19. "It was intended as a vehicle to allow shareholders to protect a corporation's interests from faithless directors and managers. [Citation.]" (Internal quotation marks omitted.)" *Id*. The standard by which we review the trial court's judgment depends on the nature of the order being appealed. See, *e.g.*, *Biefeldt*, 2022 IL App (1st) 210336, ¶ 18 (reviewing *de novo* order dismissing shareholder derivative action under section 2-615); *Tufo v. Tufo*, 2021 IL App (1st) 192521, ¶ 71 (reviewing application of doctrine of unclean hands in shareholder derivative action for abuse of discretion).

¶ 37    This appeal raises questions about (1) the trial court's findings of fact—particularly the trial court's finding that Saeed breached his fiduciary duties by renewing the Unit 1 lease or entering the lease for Unit 2 with the third tenant because no evidence reflects that Musa and Ahmed revoked the parties' oral agreement and the court's finding that Saeed's breaches, if they occurred, materially harmed Salaam such that the trial court's "offsetting breach of fiduciary duties" rationale crumbles; and, should Saeed prevail on the first question, (2) the trial court's

failure to award attorney fees, and (3) the trial court's choice of remedies to dissolve Salaam rather than disassociate Musa and Ahmed.

¶ 38    We review the trial court's findings of fact in a shareholder derivative action under the manifest weight of the evidence standard. *Goldberg v. Astor Plaza Condominium Ass'n*, 2012 IL App (1st) 110620, ¶ 60 ("In deciding a case based on the evidence, our standard of review is manifest weight of the evidence."). Under this standard, we will not disturb a trial court's findings of fact unless the opposite conclusion is apparent or the trial court's findings are unreasonable, arbitrary, or not based on evidence. *Id*. (citing *Bazydlo v. Volant*, 164 Ill. 2d 207, 215 (1995)). For the reasons discussed below, we find that the trial court's findings of fact are not against the manifest weight of the evidence. Therefore, we have no need to and will not address Saeed's remaining claims. *Chinlund v. Heffernan Builders, LLC*, 2020 IL App (1st) 191528, ¶ 17 ("Generally, this court will not decide moot questions, render advisory opinions, or consider issues where the result will not be affected regardless of how those issues are decided.").

¶ 39                                              I

¶ 40    Saeed argues the trial court's rationale for not awarding Salaam damages on Saeed's derivative claim, that the parties committed "mutual breaches" negating damages, is against the manifest weight of the evidence. In support of that argument, Saeed asserts (1) he did not commit the breaches of fiduciary duty that led the trial court to decline to award Salaam damages on the derivative claim; to wit, (a) renewing the lease on Unit 1 and entering the lease on Unit 2 with the third tenant (both of which occurred in October 2016) without Musa and Ahmed's knowledge and consent (hereinafter, collectively the "2016 leases") and (b) failing to deposit the

rents he collected under the 2016 leases into Salaam's account; and (2) if he did breach his fiduciary duty to Salaam, his breach did not materially harm Salaam.

¶ 41    Turning first to Saeed's argument he did not breach his fiduciary duties by entering into the 2016 leases without Musa and Ahmed's knowledge and consent Saeed argues that the parties' oral agreement permitted him to enter the leases unilaterally and that no evidence reflects that Musa and Ahmed revoked that agreement prior to Saeed entering the leases at issue.

¶ 42    The trial court "specifically reject[ed] the argument that Salaam incurred damages due to the termination of either the second [Unit 1] lease or the [third tenant's] lease as they were not unanimously agreed to by all Salaam's members." The court based that conclusion on its finding that "it was clear from the testimony and evidence, that all of the rental money that had been collected by Saeed' was used to pay Salaam's expenses and not for his own personal expenses. These expenses were legal obligations that Musa and Ahmed repeatedly refused to honor."

¶ 43    Saeed concedes the trial court made the following express written finding:

"With these findings being made, it needs to be made clear that this oral agreement relative to the management of Salaam was not intended to be for an infinite time period as Saeed implied during the trial. In fact, it was clear that by early on in 2016, Musa and Ahmed had made clear efforts to revoke their prior oral agreements, as they no longer wanted Saeed to further manage Salaam."

¶ 44    But Saeed argues that "nothing in the trial record supports this finding of fact." In response, Musa and Ahmed argue that the record shows the second Unit 1 lease was against Musa and Ahmed's authorization as they evicted the tenant from Unit 1. We disagree with Saeed.

¶ 45    The trial court's written order also found as follows, first with regard to Unit 1:

"On September 27, 2016, attorney William Cooley, who was counsel for Musa and Ahmed, mailed Saeed a notice which reflected that Salaam would not be renewing [Unit 1's] Lease and that [it] had to vacate Unit 1. [Citation.] Despite this notice, on October 1, 2016, Saeed, who was clearly acting on behalf of [the laundromat in Unit 1,] renewed the *** lease for Unit 1 with Salaam at the existing rental rate for an additional 15-year term. Saeed also signed the lease on behalf of Salaam. [Citation.]

It was very clear that Saeed had no authority to bind Salaam to this second [Unit 1] lease and that neither Musa nor Ahmed were aware of the second [Unit 1] lease nor would they have approved of it had Saeed made them aware of it."

¶ 46 As previously stated, this court will only find that the trial court's findings of fact are against the manifest weight of the evidence when the opposite conclusion is apparent or when the trial court's findings are unreasonable, arbitrary, or not based on the evidence. *Goldberg*, 2012 IL App (1st) 110620, ¶ 60. This rule has been applied to mean that "when applying a manifest weight of the evidence standard, a reviewing court will not substitute its judgment for that of the trial court on such matters as witness credibility, the weight to be given evidence, and the inferences to be drawn from the evidence, even if the reviewing court would have reached a different conclusion." *Dore v. Quezada*, 2017 IL App (1st) 162142, ¶ 25. The reason for this level of deference to the trial court's findings is that the trial court "is in the best position to observe the conduct and demeanor of the parties and witnesses and achieves a degree of familiarity with the evidence that a reviewing court cannot possibly obtain." *Granville Tower Condominium Ass'n v. Escobar*, 2022 IL App (1st) 200362, ¶ 27. Moreover, "the trial court's judgment will be affirmed provided the record contains any evidence supporting it." *Id.*

¶ 47    First, we note Saeed does not argue that Musa and Ahmed could not rescind the parties' oral agreement that Saeed would have sole authority over the management of the subject property. This court has long recognized that: "Just as contracts may be implied from the conduct of the parties, so may a rescission of contracts be implied therefrom. Words amount to very little where actions are conclusive." (Internal quotation marks omitted.) *Volk v. Kendall*, 71 Ill. App. 3d 211, 213 (1979) (quoting *Julius Levin Co., Inc. v. Rosenfield*, 230 Ill. App. 126, 138 (1923)).

¶ 48    Second, we find that it is not "clearly apparent" that Musa and Ahmed did not rescind that agreement. Admittedly, Musa and Ahmed do not direct this court to any facts specifically demonstrating their revocation of the parties' oral agreement other than their actions concerning Unit 1 before Saeed entered the second lease on that unit. Nonetheless, we do not find the opposite conclusion apparent and the circumstantial evidence supports the trial court's finding of fact.

¶ 49    Prior to the execution of the leases in question, Musa and Ahmed's conduct was wholly inconsistent with a "hands off" approach to the subject property. The trial court had evidence that Musa and Ahmed were communicating with the tenants of the property to convince them to move out. It is not unreasonable to conclude from their conduct that Musa and Ahmed no longer reposed sole authority over the subject property in Saeed. In addition to the letter concerning Unit 1, the evidence reflects that Musa and Ahmed were also exerting their rights as equal members with regard to Unit 2 prior to the execution of the lease with the third tenant. Moreover, at trial, Saeed testified that the second tenant's proprietor told Saeed that the reason it was leaving before its lease expired was because "Musa's attorney called her, [and] told her that [Saeed] was not the owner or the landlord." The trial court admitted that testimony over objection because the testimony was "closing up the impeachment that was started *** when

[Musa] denied any conversation with [the proprietor.]" Musa had denied talking to any of the tenants in Unit 2 about being upset that Saeed had leased Unit 2 to them and denied ever telling any of the tenants to leave the space. Saeed's arguments about the timing of the letter from Musa and Ahmed's attorney and his receipt of it notwithstanding, the record reflects evidence on which the trial court could reasonably rely in support of its judgment.

¶ 50    This court does not reweigh the evidence as Saeed suggests we should; instead, our inquiry is whether the trial court's judgment is unreasonable, arbitrary, or not based on evidence. Here, based on our review of the facts in the record, Saeed has not demonstrated that the trial court's conclusions are unreasonable or that the opposite conclusion is clearly apparent. Accordingly, we must find that the trial court's judgment is not against the manifest weight of the evidence.

¶ 51    Finally, we note Saeed's argument that Musa and Ahmed should not be "permitted to both argue that the second [Unit 1] lease and the [third tenant's Unit 2] lease are invalid because they never consented to them while they also let stand the trial court's ruling that they breached their fiduciary duties by '[r]efusing to consent to any decision' related to the leasing of the Property." Rather than a convincing argument that the trial court erred in declining to award any damages based on the parties' respective conduct, we find Saeed's statement to be a clear, concise, and convincing explanation for exactly why the offending conduct is offsetting.

¶ 52    The trial court's conclusions are not arbitrary but are based on evidence and the trial court had the opportunity to observe the demeanor and manner of the witnesses while testifying. (We note that at one point in his testimony Musa apologized for raising his voice but stated he did so out of frustration with the entire situation, which he and Ahmed wanted out of.) The witnesses attitudes, apparent from even the cold record, support the trial court's conclusion that

"Musa and Ahmed had made clear efforts to revoke their prior oral agreements, as they no longer wanted Saeed to further manage Salaam" because "both Musa and Ahmed wanted to sell the Property" when he entered the leases at issue. Because there is evidence supporting the trial court's findings and those findings are reasonable based on that evidence, we cannot say the trial court's findings of fact are against the manifest weight of the evidence.

¶ 53                                      II

¶ 54    Next, Saeed argues that it was against the manifest weight of the evidence to find that Saeed failed to deposit all of the rental income he received. Saeed argues that the record reflects that Saeed did deposit all rent payments into Salaam's account. "A trial court's finding is against the manifest weight of the evidence only where the 'opposite conclusion is clearly evident.' [Citation.] Thus, '[i]f the record contains any evidence to support the trial court's judgment, the judgment should be affirmed.' [Citation.]" *InsureOne Independent Insurance Agency, LLC v. Hallberg*, 2012 IL App (1st) 092385, ¶ 29. Further, an action for a breach of fiduciary duty sounds in equity.

> "Illinois courts have recognized that an action seeking damages for breach of a fiduciary duty is an equitable action. [Citation.] The court in *Borse* noted that our supreme court rejected the Restatement's view that an action for breach of fiduciary duty is a tort; instead, a claim for breach of fiduciary duty is controlled by the substantive laws of agency, contract and equity. [Citations.]' " *Wolinsky v. Kadison*, 2013 IL App (1st) 111186, ¶ 109 (citing *Bank One, N.A. v. Borse,* 351 Ill. App. 3d 482, 488 (2004)).

Equitable remedies "must suit the facts of the particular case in question." *Perry v. Estate of Carpenter*, 396 Ill. App. 3d 77, 87 (2009). "[I] it is the function of a court of equity to do

justice." *Carlyle v. Jaskiewicz*, 124 Ill. App. 3d 487, 499 (1984). See also *Heberlein v. Wendt*, 99 Ill. App. 506, 508 (1902) ("A court of equity is governed mainly by considerations of right and justice between the parties.") "A court of equity is a court of conscience, and will exercise its extraordinary powers only to enforce the requirements of conscience." *American University v. Wood*, 294 Ill. 186, 195 (1920). "In fashioning a remedy, courts have broad discretion to grant the relief that equity requires. [Citation.]" (Internal quotation marks omitted.) *GX Chicago, LLC v. Galaxy Environmental, Inc.*, 2015 IL App (1st) 133624, ¶ 72 (quoting *Westcon/Dillingham Microtunneling v. Walsh Construction Co. of Illinois*, 319 Ill. App. 3d 870, 878 (2001)). Additionally, "courts may consider the relative benefits and hardships to the parties in crafting an appropriate remedy. [Citation.]" *Westcon/Dillingham Microtunneling*, 319 Ill. App. 3d at 878. "Relevant considerations include both what is fair and what is workable. [Citation.]' " *GX Chicago, LLC*, 2015 IL App (1st) 133624, ¶ 72 (quoting *Westcon/Dillingham Microtunneling*, 319 Ill. App. 3d at 878).

¶ 55    Saeed directs this court's attention to bank statements that purportedly show deposits of the second tenant's rents into Salaam's bank account. We admit those record items reflect numerous deposits in an amount that is roughly the amount of rent to be paid by the second tenant of Unit 2. (At trial, Saeed testified the tenant informed him they could not pay the full rent.) But we give credence to Musa and Ahmed's argument that the exhibits provided "show that the amount of bank statements provided don't even cover the amount of monthly rent payment [Saeed] alleged [the second tenant] paid *** at trial." [1] Saeed provides, nor can we

---

[1]    Saeed provided bank statements showing $2000 deposits, which he claims reflect the second tenant's rent payments, in May, June, July, August, October (twice), and November 2014, January,

- 21 -

glean, no evidence to explain these discrepancies *beyond his own testimony* at trial[2], which the trial court was free to accept, reject, and weigh as it saw fit. *Northwestern Memorial Hospital v. Sharif*, 2014 IL App (1st) 133008, ¶ 26 (it is a "well-established legal principal that the trier of fact, in this case an experienced trial judge, is free to accept or reject testimony and give whatever weight it deems appropriate to the evidence submitted. Under a manifest weight of the evidence review, we give the trial court's decision great deference because '[t]he trial court is in a far better position to determine the credibility of witnesses.' [Citations.]").

¶ 56    The trial court's conclusion is bolstered by Saeed's own testimony regarding the rent from Unit 1: that Saeed sometimes paid Salaam's bills directly rather than depositing the rent into Salaam's account first. The trial court could reasonably infer Saeed followed the same procedure with the rent from Unit 2, thus accounting for the shortfall in the documentation of some deposits and varying amounts. Thus, the evidence on which Saeed relies does not demonstrate that the trial court's judgment regarding the deposit of rental payments is against the manifest weight of the evidence. See *Benford v. Everett Commons, LLC*, 2014 IL App (1st) 131231, ¶ 32 (citing *Foutch v. O'Bryant,* 99 Ill. 2d 389, 391-92 (1984)). Moreover, "[a]ny doubts arising from the incompleteness of the record are resolved against *** the appellant in this case. Therefore, plaintiff's claim that the verdict was against the manifest weight of the evidence fails on this basis as well." *Larkin v. George*, 2016 IL App (1st) 152209, ¶ 21.

---

February, April, May ($1,500), June ($1,500) July ($3,000), August through October, and December 2015, January through March, April ($3,000), May, and December ($1,250) 2016.

[2]    Saeed asserts the bank entries "are consistent with Saeed's rent summary table [citation] and testimony."

¶ 57    We also find that the trial court's judgment is not against the manifest weight of the evidence because "we may affirm the trial court's judgment on any basis in the record, regardless of the trial court's reasoning" (*Bell Leasing Brokerage, LLC v. Roger Auto Service, Inc.*, 372 Ill. App. 3d 461, 469 (2007)) and "[a]n award of damages is not against the manifest weight or manifestly erroneous if there is an adequate basis in the record to support the trial court's determination of damages (*1472 N. Milwaukee, Ltd. v. Feinerman*, 2013 IL App (1st) 121191, ¶ 13).

¶ 58    The trial court could look at all of the facts and circumstances of the case, and was not limited to the respective breaches related to the individual units or the same conduct related to the individual units, to find that it would "not make any award based on these mutual breaches." See generally *Westerfield v. Redmer*, 310 Ill. App. 246, 249 (1941) ("Supreme Court Rule 10 provides in substance that *** all matters which prior to January 1, 1934, *** within the jurisdiction of a court of equity, whether directly or as an incident to other matters before it, or which the equity court could have heard so as to do complete justice between the parties, might be regarded thereafter as a single equitable cause of action and when so treated *** should be heard and decided in the manner heretofore practiced in courts of equity."). We so find because "[i]n an equitable proceeding, the trial court may examine all relevant factors to ensure that complete justice is done; the determination of what equity requires in a particular case." 88 Causes of Action 2d 1, *Cause of Action for Breach of Fiduciary Duty by Manager or Controlling Member of Limited Liability Company*, Causes of Action Second Series September 2022 Update (Originally published in 2019). See also *In re Estate of Zagaria*, 2013 IL App (1st) 122879, ¶ 67 (Cunningham, J., dissenting) ("*When all of the facts are reviewed and the case is analyzed as a whole*, the equities do not lie with the attorneys and Corlett but rather with

Zagaria. While I agree that equitable principles do not preclude the application of statutorily based attorney fee obligations, I believe that the equitable principles have been incorrectly applied by the majority in this case." (Emphasis added.)).

¶ 59     The trial court could rely on Saeed's failure to deposit the rent from Unit 1 *or* from Unit 2 to find that Saeed's breach, specifically a "failure to deposit the [Unit 1] collected rental monies into Salaam's account and/or transmit said monies to Salam when balanced against Musa and Ahmed's conduct which led to MK Fast Foods' breach of its lease with Salaam extinguish each other's respective damages." In this case the evidence is clear that Saeed used the rent from Unit 1 to pay Salaam's bills that Saeed selected rather than depositing the Unit 1 rent into Salaam's account. The evidence supporting that finding came from Saeed. When asked how he would pay the rent on Unit 1, Saeed testified that he "would pay the bills depending on what comes in and what has to go out." Saeed continued, "Sometimes I would *** deposit it into the bank. Sometimes I would have to pay for repairs ***. Some would have to cover the bills and whatever was left ***." Saeed explained that if Salaam did not have the money he would pay the bills out of Unit 1's funds and deduct that amount from the rent due Salaam. Saeed agreed he did not deposit the rent into Salaam's account then pay Salaam's bills. Notably, when asked what bills he was referring to, Saeed testified: "Mortgage, insurance, water, maintenance, cleaning, repairs, water bill, insurance, property insurance, mortgage to the building." With the exception of the water bills, these bills (specifically the mortgage and insurance) are bills for Unit 2 as well as for Unit 1.

¶ 60     The trial court's decision not to award damages on Saeed's derivative claim is not against the manifest weight of the evidence.

¶ 61                                             III

¶ 62    Saeed argues alternatively that even having committed a breach of his fiduciary duties as found by the trial court, the trial court erred in denying Salaam relief in Saeed's derivative claim against Musa and Ahmed because the finding that the respective breaches "were comparable and offsetting" is against the manifest weight of the evidence. Saeed claims "[n]o evidence suggests the two sides acted comparably and that the misconduct of one offset the misconduct of the other." Saeed argues that while Musa and Ahmed's conduct only harmed Salaam by denying it income, Saeed's conduct, even though it was a breach of his fiduciary duties, actually "benefitted Salaam by providing Salaam with some income." (Emphasis omitted.) We disagree with Saeed's assessment that no evidence supports the trial court's judgment concerning the deposit of the rent payments or the "offsetting" breaches of fiduciary duty.

¶ 63    We begin by noting that the trial court expressly rejected the contention Salaam suffered any damage due to the termination of either of the 2016 leases because those leases "were not unanimously agreed to by all Salaam's members." This judgment is not against the manifest weight of the evidence in light of our finding that the trial court's judgment that Saeed breached his fiduciary duties in entering those leases must stand. Musa and Ahmed did deprive Salaam of the rent the tenants had been paying and, by their conduct, any rental income. However, in weighing the respective breaches the trial court also relied on "Saeed's failure to deposit *** collected rental monies into Salaam's account and/or transmit said monies to Salaam." Although not expressly relied upon by the trial court[3], we note that Saeed also wrongfully bound Salaam to receive the same rent from the tenant in Unit 1 for the next 15 years. Although the trial court

---

[3]    "Under the manifest weight standard, an appellate court will affirm the trial court's ruling if there is any basis in the record to support the trial court's findings." *In re Custody of G.L.*, 2017 IL App (1st) 163171, ¶ 24.

refused to find this rent was below market rate the court could have considered the length of the lease terms without any provision for increasing the rent over time (just as Saeed did with the 2016 lease on Unit 2) as at least somewhat detrimental to Salaam and to Musa and Ahmed. The detrimental impact of this lease on Musa and Ahmed is compounded by the fact, supported by ample evidence, that Musa and Ahmed did not want to be involved in the property at all and clearly not want to be for another 15 years.

¶ 64    The trial court could consider more than "the numbers" in assessing the relative impact of the respective breaches of fiduciary duty and take the impact on the parties into consideration. See *supra* § II. In this particular case, the trial court could reasonably find, based on the facts before it, that it would be unjust to allow Saeed to completely escape the consequences of the fact, as expressly found by the trial court and supported by the evidence as stated above, that "Saeed defiantly refused to acknowledge that Musa and Ahmed had a right to object to his management of Salaam or that they had any right to object to his continued role in Salaam's management."

¶ 65    We further find the evidence supports the trial court's finding that "Saeed was well aware that both Musa and Ahmed wanted to sell the Property." The trial court reasonably found that Saeed's breach required some remedy for Musa and Ahmed to do justice between the parties and could reasonably find that any such damages offset the harm to Salaam from Musa and Ahmed's breaches. The trial court's findings are not unreasonable, arbitrary, or not based on the evidence, nor is the opposite conclusion, that Musa and Ahmed's breach so far outweighed Saeed's breach that the trial court improperly considered Saeed's breach in fashioning its damages award, apparent. *Goldberg*, 2012 IL App (1st) 110620, ¶ 60. The trial court's judgment declining to

award damages for the parties' respective breaches of fiduciary duties is not against the manifest weight of the evidence.

¶ 66                                    IV

¶ 67    Next, Saeed argues that in the event he prevails on his derivative claim, then he is entitled to an award of attorney fees under the operating agreement or the case should be remanded for the trial court to consider an award of attorney fees under the LLC Act. Saeed also argues that in the event any breach of fiduciary duty ruling against him is vacated, then the case should be remanded for the trial court to consider disassociation and a forced buyout as an appropriate remedy as opposed to dissolving Salaam.

¶ 68    Saeed forfeited any argument he is entitled to attorney fees or that dissolution is not the proper remedy if the trial court's judgment stands.[4] "The supreme court rules are not merely suggestions, but are necessary for the proper and efficient administration of the courts. [Citation.] This court will not *** complete legal research to support an argument, and issues that are

---

[4]    Saeed argued in his opening brief as follows:

    "Saeed prevailed on all his claims. Saeed recovered *** damages in connection with Musa and Ahmed breaching their fiduciary duties to his and *depending on how this Court rules*, potentially another $223,245 damages on his derivative claim in connection with Musa and Ahmed breaching their fiduciary duties to Salaam. *Accordingly*, it was an abuse of discretion for the trial court not to consider Saeed to be the prevailing party." (Emphases omitted and emphasis added.)

    In reply, Saeed argues:
    "Should Saeed prevail, no basis would then exist to have denied Saeed an award of fees on the basis that he committed 'multiple breaches' of his fiduciary duties."

    This is in effect a concession that should Saeed fail in his effort, a basis would exist to deny him an award of fees, Saeed's alternative argument should he not prevail in his reply notwithstanding. Furthermore, "an appellant's arguments must be made in the appellant's opening brief and cannot be raised for the first time in the appellate court by a reply brief." *In re Marriage of Winter*, 2013 IL App (1st) 112836, ¶ 29.

insufficiently presented do not satisfy the rule[s] and are considered waived. [Citation.]” (Internal quotation marks omitted.) *Northern League of Professional Baseball Teams v. Gozdecki, Del Giudice, Americus & Farkas, LLP*, 2018 IL App (1st) 172407, ¶ 62. For all of the reasons discussed above the trial court's judgment must be affirmed in all respects. Accordingly, we decline to address Saeed's alternative arguments concerning attorney fees or the dissolution of Salaam.

¶ 69                                                    V

¶ 70     Finally, Saeed argues the trial court erred in refusing to award him punitive damages. Unlike his argument concerning the proper remedy of attorney fees, Saeed did not make this argument contingent upon success on his prior argument. In this regard, Saeed argues the trial court erred because Musa and Ahmed “intentionally,” not due to mistake, violated their fiduciary duties including taking a loan for their sole personal benefit with the goal of forcing Saeed to agree to sell the property, with the result of causing Saeed to cover all of Salaam's operating expenses including debt service on the loan. Saeed calls this conduct “indefensible” that must be “deterred and punished.”

¶ 71     Saeed asserts that based on the trial court's findings, “reasonable minds cannot seriously differ as to whether Musa and Ahmed's conduct was outrageous due to an ‘evil motive’ and ‘reckless indifference’ to the rights of Salaam and Saeed.” We disagree.

>          “Punitive damages are not awarded as compensation, but serve instead to
>          punish the offender and to deter that party and others from committing similar
>          acts of wrongdoing in the future. [Citations.] They may be awarded when the
>          defendant's tortious conduct evinces a high degree of moral culpability, that is,
>          when the tort is committed with fraud, actual malice, deliberate violence or

oppression, or when the defendant acts willfully, or with such gross negligence as to indicate a wanton disregard of the rights of others. *** [B]ecause they are penal in nature, punitive damages are not favored under the law, and courts must take caution to ensure that they are not improperly or unwisely awarded. [Citation.]" (Internal quotation marks omitted.) *Flynn v. Maschmeyer*, 2020 IL App (1st) 190784, ¶ 76.

¶ 72    "In reviewing a trial court's decision to award punitive damages, this court takes a three-step approach." *Caparos v. Morton*, 364 Ill. App. 3d 159, 178 (2006). We consider whether punitive damages are available for the particular cause of action, using a *de novo* standard; whether, under a manifest weight of the evidence standard, the defendant or defendants acted fraudulently, maliciously or in a manner that warrants such damages; and whether the trial court abused its discretion in imposing punitive damages. *Id.* Pertinent in this appeal, "we review the trial court's reasons for imposing punitive damages to determine if its judgment *** was contrary to the manifest weight of the evidence" and we will only find that the trial court abused its discretion if no reasonable person could assume its view. *Id.*

¶ 73    Here, we find that trial court's reasons *not* to award punitive damages are not against the manifest weight of the evidence and, accordingly, the trial court did not abuse its discretion in declining to award punitive damages. The trial court found as follows with regard to punitive damages:

> "Based upon a careful review of the identified conduct in light of the remedies that are being otherwise ordered and the unlikelihood that the parties will commit similar acts of wrongdoing in the future, the Court denies the parties' request for punitive damages."

¶ 74    As stated earlier, a judgment is against the manifest weight of the evidence only where the opposite conclusion is apparent or the trial court's findings are unreasonable, arbitrary, or not based on evidence. *Goldberg*, 2012 IL App (1st) 110620, ¶ 60. The trial court's judgment on its face establishes that the judgment is based on the evidence. Nor can we say the opposite conclusion is apparent or that the trial court's findings are unreasonable. The facts are that all of the parties to this case violated one or more fiduciary duties owed to the corporation and each other beginning shortly after the inception of the corporation; the trial court compensated the parties for their individual losses caused by the various breaches of fiduciary duties; and in light of the trial court's judgment dissolving the corporation, which we have affirmed, it is impossible for the parties to commit similar acts of wrongdoing in the future.

¶ 75    We disagree with Saeed that no reasonable person would take the view that Musa and Ahmed's conduct in this case does not reflect a high degree of moral culpability because it was "committed with fraud, actual malice, deliberate violence or oppression," or that they did not "indicate a wanton disregard of the rights of others" sufficient to overcome the disfavor of punitive damages. Musa and Ahmed did not find the business venture profitable or worthwhile as Saeed clearly did. This is a simple business disagreement. Their tactic to extricate themselves from the business may have been ruthless; but, the evidence is also that Saeed would not budge from his position and, therefore, Musa and Ahmed may have thought, even unreasonably, they had no other choice. Regardless of our or Saeed's personal views, we cannot say that no reasonable person would take the view adopted by the trial court. Therefore, the trial court's judgment regarding punitive damages must be affirmed.

¶ 76                                   CONCLUSION

¶ 77    For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

1-22-0209

¶ 78    Affirmed.